2018 PA Super 281

| CARLINO EAST BRANDYWINE, L.P. | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRANDYWINE VILLAGE | : | |
| ASSOCIATION AND ASSOCIATED | : | |
| WHOLESALERS, INC. ---------------- | : | No. 3388 EDA 2017 |
| ------------------------------------------- | : | |
| -------------------------- | : | |
| BRANDYWINE VILLAGE ASSOCIATES | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CARLINO EAST BRANDYWINE, L.P. | : | |
| AND CHRISTINA B. KETTLETY AND | : | |
| KATHERINE W. KETTLETY, CO- | : | |
| ADMINISTRATORS OF THE ESTATE | : | |
| OF FRANK WATTERS; AND | : | |
| CHRISTINA B. KETTLETY AND | : | |
| KATHERINE W. KETTLETY JOINTLY | : | |
| AS CO-EXECUTORS OF THE ESTATE | : | |
| OF BEATRICE S. WATTERS, DEC. | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: BRANDYWINE VILLAGE | : | |
| ASSOCIATES | : | |

Appeal from the Order Entered September 20, 2017
In the Court of Common Pleas of Chester County Civil Division at No(s):
2011-05037-MJ,
2011-05189-MJ

BEFORE:   BENDER, P.J.E., NICHOLS, J., and STEVENS*, P.J.E.

OPINION BY STEVENS, P.J.E.:                    **FILED OCTOBER 16, 2018**

Brandywine Village Associates (hereinafter "BVA") appeals from the

Order entered in the Court of Common Pleas of Chester County on September

_____

*   Former Justice specially assigned to the Superior Court.

20, 2017, granting the motion of Carlino East Brandywine, L.P., Christina B. Kettlety, Katherine W. Kettlety, Co-Administrators of the Estate of Frank Watters, and Christina B. Kettlety, Katherine W. Kettlety, Co-Executors of the Estate of Beatrice S. Watters, Deceased (hereinafter collectively "Carlino") seeking summary judgment and the dismissal of BVA's Declaratory Judgment action.[1]  Following our review, we affirm.

Various collateral disputes involving BVA and Carlino and/or other entities have been appealed to and either decided by or are pending in both

_____

[1] In its Action for Declaratory Judgment, BVA requested that the trial court make certain declarations regarding various easements and rights-of-way that Carlino's predecessors-in-title had granted to BVA to install, maintain and use a road for ingress and egress to BVA's property, as well as award counsel fees, interest and costs.  **See** Action for Declaratory Judgment at ¶¶8, 99.  The Declaratory Judgments Act, 42 Pa.C.S. §§ 7531-7541, provides that courts of record have the power to declare the rights, status, and other legal relations. As our Supreme Court has observed:

> Generally speaking, appellate courts have jurisdiction to entertain appeals from final orders entered at the trial court level. **Commonwealth v. Scarborough**, 619 Pa. 353, 64 A.3d 602, 608 (2013). Ordinarily, a final order disposes of all claims and of all parties. Pa.R.A.P. 341(b)(1). However, Pa.R.A.P. 311(a)(8) states that an "appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from ... [a]n order that is made final or appealable by statute or general rule, even though the order does not dispose of all claims and of all parties." Importantly, Section 7532 of the [Declaratory Judgment Act] provides that courts of record have the power to declare the rights, status, and other legal relations and that "such declarations shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532.

> Herein, the trial court's September 20, 2017, Order effectively denied BVA's claim for declaratory relief.  Thus, the Order is appealable.  **Id**.

this Court and the Commonwealth Court.[2]  The instant appeal arises from two,

separate declaratory judgment complaints filed by BVA and Carlino against

_____

[2] The Commonwealth Court rightly described one of these appeals as "confusing." **See _Brandywine Vill. Assocs. v. E. Brandywine Twp. Bd. of Supervisors_**, No. 164 C.D. 2017, unpublished memorandum at 1 (Pa. Commw. Filed Jan. 5, 2018). Also, in our unpublished memorandum decision filed on October 20, 2014, wherein we concluded _sua sponte_ that Carlino's petition for specific performance was interlocutory and, therefore, not appealable, we noted that "multiple procedural irregularities, contradictory trial court orders, and the absence of may documents from the certified record have hampered our review of this case." **See _Carlino E. Brandywine, L.P. v. Brandywine Vill. Assocs._**, No. 2558 EDA 2013, unpublished memorandum 1 (Pa.Super. filed Oct. 20, 2014).

each other.[3]  The relevant facts and procedural history which led to the trial court's September 20, 2017, Order as stated by the trial court are as follows:[4]

_____

[3] We note with amusement that counsel for the parties stated the following on the record:

> [Counsel for Carlino]:  I—I appreciate what Judge Nagle is doing because we have all seen this so many times what the appellate courts do. They sit there, and all of a sudden they say you guys didn't know what you were doing after you spent God knows how much time doing it.
>
> [Counsel for BVA]:  They did it last time.
>
> [Counsel for Carlino]:  I –now I have something to agree with you on.

N.T. Hearing, 3/12/15, at 37.

The fact that BVA has attached to its appellate brief trial court opinions and an order which do not pertain to the order from which Appellant is now appealing, but rather concern the July 18, 2017, Order denying the Land Use Appeal and affirming the decision o the East Brandywine Township Board of Supervisors, *see* "Appendix "B" and Appendix "C" to Brief for Appellant, evinces that, these statements to the contrary, counsel are not infallible, despite their familiarity with the case.

[4] The Commonwealth Court's most recent decision concerning BVA's preliminary objections in response to East Brandywine Township's declaration of taking provides a detailed recitation of facts and procedural history some of which also is implicated herein. ***See Condemnation of Fee Simple Title to 0.069 Acres of Vacant Land & Certain Easements Owned by Brandywine Vill. Assocs.***, No. 1409 C.D. 2017, unpublished memorandum, at 1-3 (Pa.Commw. filed July 2, 2018), *reargument denied*, (Aug. 14, 2018). In that case, BVA, appealed the Order of the Court of Common Pleas of Chester County overruling its preliminary objections in response to East Brandywine Township's declaration of taking to condemn the southeastern edge of a 10.46 acre parcel of property for the construction of a connector road to link the parcel with Route 322 (Horseshoe Pike), on which it fronts,

**DECISION**

[Carlino], defendants in [BVA's] Declaratory Judgment action, Docket No. 11-05189-MJ, seek summary judgment and dismissal of BVA's Complaint. [Carlino's] summary judgment motion (the "Motion") was filed on October 29, 2015. BVA filed an Answer on December 16, 2015.

Carlino filed a separate declaratory judgment action, entitled Carlino East Brandywine L.P. v. Brandywine Village Associates et al, Docket No. 2011-05037-MJ) on May 11, 2011. To distinguish the cases, plaintiff in the latter action is identified as "Carlino". The actions were consolidated on September 22, 2011. In Carlino's action, on April 30, 2015, BVA filed a "Brief on the Declaratory Judgment Interpretation of its Easements", to which [ ] Carlino filed a "Response in Opposition". The consolidated cross declaratory judgment complaints and their attached Exhibits are appropriate for our consideration respecting the Carlino Defendant's Motion. In its case, Carlino motioned for summary judgment, which we denied on October 10, 2012.

**History of the Case:**

At issue in these declaratory judgment actions is the construction of a 1994 Cross Easement Agreement (the "Agreement") between BVA and the late Frank and Beatrice Watters, who originally owned land on Horseshoe Pike (SR322) in East Brandywine Township, Chester County, subsequently divided into contiguous parcels of 11.535 acres and 10.645 acres. The Watters conveyed the 11.535 acres parcel to BVA on June 24, 1994, and contemporaneously entered into the Agreement with the Watters, pursuant to which the parties granted and conveyed to each other certain cross easements to facilitate development of the parcels. As alleged in BVA's May 16, 2011[,] Complaint, under the Agreement's terms, the Watters granted BVA the following easements over the Watters' retained 10.645 acre parcel, described in BVA's Declaratory Judgment Complaint as: (1) a "perpetual easement" on the Watters' Parcel, 0.460 one-hundreds of an acre in area, "in common with" the Watters' Parcel" providing

_____

and North Guthriesville Road.  The Commonwealth Court ultimately affirmed the trial court's Order overruling BVA's preliminary objections.

access, egress and ingress to BVA's parcel; (2) a 2.282 acre sanitary sewer easement pursuant to which sewage from BVA's parcel would be treated and disposed of in an on-site package treatment plant located on the Watters' Parcel; and (3) an irrevocable stormwater basin and drainage easement 0.540 one-hundreds of an acre in area, intended to accommodate the acceptance of surface stormwater originating on BVA's parcel. *BVA Complaint, Exhibit "A"*. The approved subdivision plan for the Brandywine Village shopping center shows that the stormwater basin was also designed to accept directed water runoff from BVA's access private road from Horseshoe Pike to its shopping center. *BVA's April 30, 2015 Brief on the Declaratory Judgment Interpretation of its Easements, Exhibit "C"*.

Pursuant to a development plan approved by East Brandywine Township, in 1995 BVA constructed the Brandywine East Towne Center on its parcel, consisting of a food market, various ancillary stores, a bank and a Burger King. Pursuant to the Cross Easement Agreement, BVA constructed the following facilities on the Watters' Parcel to service its shopping center: (1) an on-site package sewage treatment plant; (2) a 45 feet wide access road providing access to its shopping center over the Watters' Parcel, and (3) a drainage basin encompassing 0.054 one-hundreds of an acre and assorted spillways to accepts surface water drainage from BVA's access driveway and, allegedly, from its Towne Center shopping center. <u>*BVA's Complaint, pp.32-42 & Exhibits "D" & "E"*</u>. The Cross Easement Agreement also obligated the Watters to grant such other easements as might be necessary to "facilitate the proper construction and development of the buildings and improvements shown on the Plan" (BVA's approved Plan). No such easements are identified in BVA's Complaint and none have been implemented.

Carlino acquired an equitable interest in the remaining Watters' Parcel from their Estates, and submitted a preliminary land development plan to the Township on May 27, 2010. The lengthy history of Carlino's efforts to secure land development approval is discussed herein where necessary to an understanding of the instant controversy. The Township Supervisors conditionally approved the latter preliminary plan on April 8, 2011[,] and Carlino accepted the conditions imposed, and on July 20, 2011[,] entered into a development agreement with the Supervisors memorializing various undertakings to which Carlino and the Township agreed. Among them, the Supervisors required Carlino to construct a road for public use on and through both the Watters' Parcel and a contiguous property now owned by the L&R

Partnership to link Horseshoe Pike and nearby Guthriesville Road. L&R is not a party to the declaratory judgment actions. Carlino then submitted a final land development plan, which was approved by the Supervisors on August 4, 2011[,] (the "2011 Approval"). We granted BVA's appeal and overruled the Board's decision for reasons not pertinent to the instant case; however, after several iterations of the plan, the Supervisors ultimately conditionally approved Carlino's revised preliminary plan on April 20, 2016, BVA and L&R appealed, and we affirmed the Board on July 18, 2017. Chester County Docket No. 2016-04843. The Board has subsequently approved Carlino's final plan, and BVA's appeal from that approval is now pending in this court before the undersigned.

As noted, from the inception of Carlino's land development applications, the Supervisors insisted that a public road, identified on Carlino's plans as Brandywine Village Drive, be constructed by Carlino through the Watters' Parcel to connect Route 322 and nearby North Guthriesville Road (the "Connector Road"). The Supervisors' intention to connect the latter roadways preceded Carlino's land development application. While the Supervisors have subsequently taken the position that, in lieu of constructing the road, Carlino could pay upwards of $2 million dollars to finance the Township's construction of the road, the fact remains the Connector Road was going to happen. In the development agreement accompanying the Carlino's land development plan approval, the Supervisors agreed, if necessary, to condemn BVA's access and stormwater drainage/detention basin easements at issue to facilitate construction of the Connector Road by exercising its power of eminent domain at Carlino's sole cost and expense. Carlino has agreed to construct the Connector Road and dedicate it to the Township upon completion of its construction. *Carlino's Response in Opposition, Exhibit "G"*.

From the inception of its shopping center, BVA has had access to its shopping center from SR322 (Horseshoe Pike) over a paved private road located on the Watters' Parcel within the access easement granted to BVA in the Cross Easement Agreement; however, under Carlino's approved development plans, BVA's access easement will be replaced by relocating such access over and through the Connector Road, to be constructed on the East side of the Watters' Parcel. BVA contends that such disruption of its existing access would require a modification of the access easement itself, which is prohibited by the terms of the Cross Easement Agreement and by applicable law. While it is correct that the Cross Easement Agreement describes the access

easement as "perpetual", the easement has been condemned by the Township. Under Carlino's approved development plan, BVA will have continued and unimpeded access to its property over the present access road pending construction of the Connector Road and, thereafter over the Connector Road. BVA's contention has been rendered moot by the Township's condemnation of BVA's access easement. As now configured, the proposed Connector Road also extends over a portion of the existing detention basin on the Watters' Parcel, which accepts surface water drainage from BVA's existing private road. Carlino argues that BVA has abandoned the detention basin and drainage easement by grading BVA's Towne Center to divert surface water drainage away from the Watters' Parcel to underground stormwater management facilities located on BVA's property. The described detention basin located with BVA's second easement will be eliminated by construction of the Connector Road, a fact BVA admits. *BVA Complaint, p. 11, paragraph 69*. BVA raises several arguments in opposition to Carlino's abandonment argument, addressed hereinafter. We find the issue is moot, considering the Township's condemnation of the detention basin and drainage easement.

Throughout this litigation and in the corresponding land development cases, BVA has vigorously contended that Carlino's proposed commercial development of its property unlawfully interferes with and impairs the contractual and vested property rights to which it is entitled by virtue of the 1994 Cross Easement Agreement. Thus it is that BVA filed the instant declaratory judgment complaint in response to Carlino's initial land development application "to prevent Defendant's unwarranted interference with the operation and maintenance of the easements granted to Plaintiff across property owned by the Defendants…". *BVA's Complaint, p. 3, paragraph 11*. BVA has subsequently argued that its position is bolstered by an earlier June 13, 1990 easement agreement with the Watters, which we conclude is superseded by the 1994 Agreement; however, BVA's complaint fails to seek our construction of the earlier easement agreement.

The relief BVA seeks in its declaratory judgment complaint includes declarations that the Cross Easement Agreement is irrevocable and cannot by modified without its consent; that only the existing access drive located with the access easement may be modified, and then only with BVA's consent; and that the said Agreement precludes Carlino from implementing a development plan that modifies or interferes with BVA's easements. *BVA's Complaint, p. 15*.

In order to sustain an action under the Declaratory Judgment Act, a plaintiff must demonstrate an "actual controversy" indicating imminent and inevitable litigation, and a direct, substantial and present interest. *Avrich by Avrich v. General Accident Ins.*, 36 Pa. Super. 248, 251, 532 A.2d 882, 884 (1987). Because an action for declaratory judgment cannot be sustained until these elements can be shown exist, it follows that a cause of action for declaratory judgment does not arise until such "actual controversy" exists. *Petition of Malick*, 133 Pa.Super. 53, 58-60, 1 A.2d 550, 553-54 (1938). The prime purpose of the Declaratory Judgment Act is to speedily determine issues that "would….be delayed, to the possible injury of those interested if they were compelled to wait the ordinary course of judicial proceedings." *Osram Sylvania Products, Inc. V. Comsub Commodities Inc.*, 845 A.2d 846(Pa. Super. 2004), citing *Gambo v. South Side Bank & Trust Co.*, 141 Pa.Super. 176, 14 A.2d 925, 927 (1940).

After BVA filed its complaint, two events intervened, which have direct bearing on BVA's right to declaratory relief. First, under the terms of the Cross Easement Agreement, BVA is required to connect its shopping center to the public sewer system when public sewer becomes available to serve BVA's shopping center. On January 11, 2013[,] Carlino filed a Petition at the instant consolidated docket seeking Specific Performance of the mandatory connection provision of the Cross Easement Agreement. By Opinion and Order issued on August 15, 2013, we enforced those provisions that mandated BVA's connection of its property to the East Brandywine Municipal Authority's public sewer system. *Carlino's Response in Opposition, Exhibit "E".* After much delay in doing so, BVA has connected its shopping center to the public sewer system, has disconnected said property from the on-site septic system constructed on the Watters' Parcel, and has dismantled and decommissioned its on-site system, all pursuant to PADEP regulations. *Carlino's Response in Opposition, Exhibit "H"*.

Second, on November 17, 2014, East Brandywine Township filed a Declaration of Taking in which it condemned BVA's access easement and its stormwater basin and drainage easement granted to BVA by the Cross Easement Agreement, discussed more fully herein below. BVA filed preliminary objections, and following multiple hearings the objections were overruled on September 7, 2017. On March 4, 2015, Carlino filed a memorandum to the consolidated captioned docket, contending that the latter events rendered BVA's declaratory judgment action

moot. We declined to act on Carlino's Motion or on BVA's declaratory judgment complaint, considering BVA's pending preliminary objections to the Declaration of Taking, more specifically described in our findings of fact below. *N.T. 3/12/15 Hearing, pp. 18 et seq.*

Subsequently, in its Declaratory Judgement Brief filed on April 30, 2015[,] and its Answer to Carlino's summary judgment motion, BVA opined that its ownership of the easements remained unaffected by both the Township's taking of its easements and the connection of its Towne Center shopping center to the Township Municipal Authority's public sewer system. We discuss and dispose of these contentions herein below. On May 18, 2015, Carlino filed of record its "Response in Opposition to BVA's Declaratory Judgment Brief["] ("Carlino's Oppositional Response"). Attached to both documents are multiple exhibits from which the parities advance their respective positions. Among these are copies of the Cross Easement Agreement and the Township's Declaration of Taking, which include metes and bounds descriptions of the easements taken, together with graphic plans of the areas taken, and other plans and documents discussed below. Accordingly, the record in the instant case contains all of the evidence required to allow us to decide the instant summary judgment motion.

We conducted a conference with counsel and the parties on September 16, 2015[,] during which we asked the parties to identify any additional witness testimony or documents they believed are required before this court has a complete record from which to make a decision on the instant Motion. Neither party identified any such additional evidence. Accordingly, we conclude that the Motion is now ripe for decision.

Trial Court Decision, filed 9/20/17, at 1-9.

In its September 20, 2017, Decision, the trial court made numerous findings of fact. Based upon those findings and its accompanying reasoning in support thereof, the trial court entered its Order granting Carlino's motion for summary judgment and dismissing BVA's Action for Declaratory Judgment. Trial Court Decision, filed 9/20/17, at 10-16, 23.

On October 16, 2017, BVA filed a notice of appeal with this Court. The trial court ordered BVA to file a concise statement of errors complained of on

appeal within twenty days on October 19, 2017, and BVA did so on November 6, 2017. That statement spans four pages and raises six issues; while the first two issues include four subparts, the fourth issue contains eight subparts, each of which asserts a separate allegation of error as follows:

1. The trial court committed an abuse of discretion and or error of law by striking evidence and/or failing to consider evidence under the following circumstances:
    a. in striking the Affidavit of John Cropper in its Order of April 19, 2016.
    b. in striking BVA's Praecipe to incorporate testimony and in granting Carlino a partial [s]ummary judgment in its Order of February 12, 2016.
    c. in its Order of May 2, 2016[,] denying BVA's Motion for Reconsideration of its February 12, 2016[,] Order.
    d. failing to find that the Cross Easement Agreement binds Carlino to provide for access for pedestrians and includes the right to curbing and signage.
2. The [c]ourt erred as a matter of law in:
    a. that the evidence presented by [BVA] significantly overcame any basic presumption in favor of Carlino and upon which judgment could be entered for Carlino.
    b. failing to uphold the requirement of the third "WHEREAS" clause of this recorded agreement that expressly states that planning would be for the "*proper and uniform*" development of the entire 20 acres.
    c. Granting Carlino's summary judgment motion because there were genuine issues of material fact outstanding as [BVA] presented substantial evidence of [Carlino's] violation of its ongoing Easement obligations pursuant to the Cross Easement Agreement including its Storm water basin easement, drainage easement and access easements which the [c]ourt refused to adjudicate.
    d. Awarding Carlino Attorney's fees and refusing [BVA's] request for Attorney's fees.
3. The [c]ourt erred as a matter of law and committed an abuse of discretion in waiting six years to decide the claims of [BVA] and then asserting they were moot due to the decision in the Declaration of Taking case.
4. The [c]ourt erred factually and as a matter of law in:

a. finding that BVA violated the Cross Easement Agreement's condition subsequent, as there was no available publicly operated sewer system in East Brandywine Township.

b. finding that the Cross Easement Agreement required Brandywine to decommission and remove the POTW from the Watters' property.

c. asserting it had jurisdiction to alter a DEP Permit terms and conditions.

d. failing to find that the Cross Easement Agreement bound Carlino to maintain BVA's easements and does not allow BVA to modify, terminate or alter Carlino's easements as described therein without [Carlino's] consent[.]

e. failing to find that Carlino and the Township acted conspiratorially to the detriment of [BVA] by planning a development in direct violation of Carlino's easement agreements encouraged and approved by the Township with knowledge aforethought.

f. failing to find that the contractual agreement between Carlino and the Township executed August 20, 2014 ("Memorandum of Understanding") was an illegal contract that openly violated Carlino's easement obligations.

g. failing to find that Carlino violated the Cross Easement Agreement by proposing to alter the access drive with [BVA's] consent.

h. Failing to find that [BVA] continued to possess post Condemnation, its easements as a license from the Township and by failing to adjudge Carlino's violation of those easements.

5. The [c]ourt erred factually and as a matter of law in failing to find that Carlino was bound by the Covenants granted to BVA by the June 13, 1990[,] Agreement which the [c]ourt knew were of record in the Brandywine 1994 Recorded plan.

6. The trial court capriciously disregarded the evidence.

Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925 at

1-3.

In its brief, BVA presents six issues for this Court's review:

A.      Whether the Lower Court's Order on the Motion for Specific Performance and rewriting the Cross Easement Agreement to require Brandywine to decommission the onsite POTW[5] was contrary to law?

B.      Whether the Lower Court erred by granting Carlino's Summary Judgment Motion when there were genuine issues of material fact outstanding?

C.      Whether the Lower Court committed an abuse of discretion and or error of law by imposing legal fees and costs on BVA pursuant to 42 PA.C.S.A. 2403(7)?

D.      Whether the Lower Court committed an abuse of discretion and or error of law by Affidavit of John R. Cropper, the Praecipe to incorporate and [Appellant's] New Matter in answer to Carlino's Summary Judgment Motion?  [sic]

E.      Whether the Lower Court committed an abuse of discretion and or error of law by failing to find that the contractual agreement between Carlino and the Township executed August 20, 2014 ("Memorandum of Understanding") was an illegal contract that openly violated Carlino's easement obligations?

F.      Whether the Lower Court erred as a matter of law and committed an abuse of discretion in waiting six years to decide the claims of BVA and then asserting they were moot due to the decision in the Declaration of Taking case?

Brief for Appellant at 3-4.

This Court's standard of review of a trial court's decision in a declaratory judgment action is narrow. Because declaratory judgment actions arise in equity, we will set aside the judgment of the trial court only where it is not supported by adequate evidence. The test is not whether we would have

_____

[5] We assume BVA is referring to publicly-owned wastewater treatment works.

reached the same result on the evidence presented, but whether the trial court's conclusion reasonably can be drawn from the evidence. **See Nationwide Mut. Ins. Co. v. Cummings**, 652 A.2d 1338, 1340–41 (Pa. Super. 1994).

Our standard of review of a challenge to an order granting summary judgment is as follows:

> We may reverse if there has been an error of law or an abuse of discretion. Our standard of review is de novo, and our scope plenary. We must view the record in the light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Furthermore, [in] evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law.

**Gubbiotti v. Santey**, 52 A.3d 272, 273 (Pa.Super. 2012) (citations omitted).

Prior to addressing the merits of BVA's claims, we are compelled to comment upon the nineteen combined allegations of trial court error it presents in its Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925. In **Jones v. Jones***, 878 A.2d 86 (Pa.Super. 2005), and **Kanter v. Epstein**, 866 A.2d 394 (Pa.Super. 2004), *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* **Spector, Gadon & Rosen, P.C. v.**

*Kanter,* 546 U.S. 1092, 126 S.Ct. 1048, 163 L.Ed.2d 858 (2006), this Court held that where an appellant's concise statement raises an unduly large number of issues (29 in *Jones,* 104 in *Kanter*), the purpose of Pa.R.A.P.1925 to identify the issues on appeal so that the trial court may address each in an opinion if its reasoning does not already appear of record is effectively subverted.

Notwithstanding, this Court also has recognized that a concise statement which at first blush appears to contain an unduly large number of issues may, upon further study, raise fewer, overlapping claims of error. *Morris v. DiPaolo*, 930 A.2d 500 (Pa.Super. 2007). In *Morris,* the appellant presented 29 issues in his concise statement; however, this Court found that the statement actually raised less numerous questions for review. Finding that the appellant had not intentionally subverted Pa.R.A.P.1925, we proceeded to address the merits of the appellant's claims. We find that the instant situation is more akin to *Morris* than to *Jones* and *Kanter;* therefore, we decline to find waiver on the basis of the volume of issues BVA raised in its concise statement and proceed to address the issues BVA included in its appellate brief.[6]

---

[6] Nevertheless, we note that "selecting the few most important issues succinctly stated presents the greatest likelihood of success." *Commonwealth v. Ellis*, 534 Pa. 176, 183, 626 A.2d 1137, 1140 (1993). This is because "[l]egal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the

BVA initially argues that the trial court's Order on "the Motion for Specific Performance" allegedly "rewr[ote] the Cross Easement Agreement to require BVA to decommission the onsite POTW"; however, BVA did not raise this specific claim in its Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925, as no mention was made therein to a motion for specific performance or to the trial court's actively "rewriting" the Cross Easement Agreement; therefore, it is waived. **See Zehner v. Zehner** 2018 WL 4178143 at *6 (Pa.Super. Aug. 31, 2018) (*citing* Pa.R.A.P. 302(a) (stating that an issue cannot be raised for the first time on appeal)); **see also**, Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."); "[A] theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief." **Tong-Summerford v. Abington Mem'l Hosp.**, 190 A.3d 631, 649 (Pa.Super. 2018) (citation omitted).

---

suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one[.]" **Commonwealth v. Robinson**, 581 Pa. 154, 187 n. 28, 864 A.2d 460, 480 n.28 (2004) (quoting Robert H. Jackson, J., "Advocacy Before the United States Supreme Court," 25 Temple L.Q. 115, 119 (1951)). **See also**, Ruggero J. Aldisert, J. "Winning on Appeal: Better Briefs and Oral Argument," 129 (2d ed. 2003) ("When I read an appellant's brief that contains more than six points, a presumption arises that there is no merit to *any* of them.") (emphasis in original).

BVA next generally maintains there were outstanding genuine issues of material fact which prevented the grant of summary judgment. In this regard, the only genuine issue of material fact BVA specifically referenced in its Rule 1925(b) statement was the allegedly substantial evidence it had presented concerning Carlino's "ongoing Easement obligations pursuant to the Cross Easement Agreement including its Storm water basin easement, drainage easement and access easements." **See** Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925 at ¶ 2 (c). Because only claims properly presented before the trial court are preserved for appeal, we consider only this specifically-referenced evidence. **See Tong-Summerford, supra**.

In analyzing this claim, we agree with the trial court's conclusion that "it is not the essential facts that are in dispute, but, rather, the parties' respective competing interpretations of what is in large part a documents case." Trial Court Decision, filed 9/22/17, at 22. Indeed, at the status conference held on March 12, 2015, BVA provided no additional documentation pertaining to the aforesaid easements and instead requested declaratory judgment based on the record:

> [Counsel for BVA]: Well, if Your Honor determines—and Your Honor certainly has the right to do it, and I would understand if you did do it. If Your Honor determines that the issue with regard to the sewer easement and all aspects thereof is resolved—and I would respectfully suggest to Your Honor it should be, because Your Honor included this issue of the removal of the plant in your order. And that had never been argued or, in my opinion, it had never been argued or briefed or dealt with, and I think that's

a significant issue that needs to be addressed. That aside, the only other easements would be the question of the—of the access easement, the water easement, which have not been addressed by Your Honor, and the reserve sewer area. And they're argument issues before Your Honor. There is no briefing—maybe a brief, but there is no discovery needed. They can be disposed of quickly.

THE COURT: Well—

[Counsel for Carlino]: And the declaratory judgment action then is done.

\*\*\*

[Counsel for Carlino]: Well, I think that it—I think, Your Honor, that we both briefed it. I don't think there are any factual issues whatsoever. There is no testimony. You've got the condemnation documents. It's an issue—it's a matter of law. We now have sat here and argued it.

THE COURT: I appreciate that. I'm just asking counsel –before maladies of litigation and such, I want to make sure that I've given every opportunity for the presentation of anything that you want before I rule. That's all I'm talking about.

[Counsel for BVA]: I understand. Your Honor could issue a ruling saying that [Counsel for Carlino] is right and that because of the condemnation the issues with regard to the easements is— are moot Your Honor, therefore, is not going to rule on them. And you could issue a ruling saying that the sewer easement in toto is disposed of by your prior ruling, and then what will be will be.

I would respectfully suggest to Your Honor that's not the proper course, that declaratory judgment action needs to be argued before Your Honor and/or briefed. Those particular issues as I recall them—we're going back years, And I didn't look through my file, Your Honor—were not briefed. There were—there was the complaint file, declaratory –judgment complaint by both of us. I don't think those questions were ever briefed directly.

\*\*\*

N.T. 3/12/15, at 31, 33-34.

In its September 20, 2017, Decision, the trial court dedicated an entire portion of its discussion to the "Extinguishment of Easements." ***See*** Trial Court Decision, 9/20/17, at 16-21. Therein, the trial court referenced

documentation in the record in support of its findings that easements for both access and stormwater discharge to the detention basin had been extinguished by the condemnation, that the condemnation extinguished BVA's rights to drain stormwater on the Watters' Parcel, and that "having condemned the subject easements, the corresponding covenants, which provide no greater rights than do the easements, were also extinguished." Upon our review of the record evidence, including the Sewer System Easement, Access Easement, and the Stormwater Basin and Drainage Easement as well as the documentation pertaining to BVA's declaratory judgment complaint and Carlino's corresponding motion for summary judgment, and applying the appropriate standard of review, we discern no error; thus, this claim fails.

BVA's third issue alleges the trial court erred and/or abused its discretion when it awarded Carlino attorney's fees. BVA does not challenge the amount of the award, but it reasons the award of attorney's fees was improper in light of the trial court's finding that while BVA was in technical, non-compliance with its September 22, 2015, Order, the trial court did not find BVA to be in contempt for failing to connect to the publicly-owned sewer line in a timely manner. BVA further contends the trial court failed to consider properly BVA's reasons for failing to comply with the deadlines the trial court had set forth in its orders. Brief for Appellant at 36-38.

This Court has explained:

[w]e have a limited power of review of court awarded fees. As the Supreme Court has so frequently stated, the responsibility for setting such fees lies primarily with the trial court and we have the power to reverse its exercise of discretion only where there is plain error. Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award. The rationale behind this limited scope of review is sound. It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in the matter at hand, and the value of that effort at the time and place involved.

*Gilmore by Gilmore v. Dondero*, 582 A.2d 1106, 1108–09 (Pa.Super. 1990) (citations omitted).

In its Order entered on February 22, 2017, the trial court denied Carlino's motion seeking monetary sanctions and directed that pursuant to 42 Pa.C.S.A. § 2503(7),[7] BVA shall reimburse Carlino $57,042.00 "for its counsel fees and costs incurred in seeking compliance with the Court's Orders identified in the Footnote below." *See* Order of Court, filed 2/22/17, at 1-2.[8]

---

[7] That statutory provision provides that a participant shall be entitled to a reasonable counsel fee as part of the taxable costs of the matter where he or she "is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter." 42 Pa.C.S.A. § 2503(7).

[8] The Declaratory Judgments Act does not expressly authorize the award of counsel fees, and counsel fees have been awarded as supplemental relief pursuant to the Act under limited circumstances. *Mosaica Acad. Charter Sch. v. Com. Dep't of Educ.*, 572 Pa. 191, 208–09, 813 A.2d 813, 824 (2002). However, the trial court did not base its award on the Declaratory Judgments Act. Thus, we do not examine the propriety of the award thereunder.

BVA's contentions to the contrary, in its lengthy footnote, the trial court explained that it had been compelled to enter its prior Orders of August 15, 2013, September 3, 2014, and September 22, 2015, as a result of BVA's failure to take such steps as were necessary to effect the sewer connection. 2/22/17, at 3 ¶ 2. The court further stated the credible preponderance of the evidence revealed during the hearings conducted on October 24-25, 2016, established that by May 26, 2016, BVA had connected each structure but for two in its shopping center to the municipal public sewer system by May 26, 2016. It further found the delay of the last two connections until June 20, 2016, was the result of the contractors' negligence. *Id*. at ¶¶ 7-8.

Notwithstanding, the court further indicated that the testimony of Allen Bixler, called by BVA to establish a defense to its alleged contempt of the trial court's February 19, 2016, Order "was wholly inadequate to overcome [Carlino's] evidence respecting the circumstances occasioning delay and the dates on which the work was actually completed." *Id*. at 5, ¶9. The trial court proceeded to analyze Carlino's claim for attorney's fees pursuant to 42 Pa.C.S.A. ¶ 2503(a)(7) and in doing so found the testimony of Fred Ebert, P.E., a professional engineer called by Carlino to testify on October 24, 2016, to be "especially significant" to its finding that BVA's conduct had been "a willful violation of [its] Orders and obdurate and vexatious in character." *Id*. at 8, ¶ 18. Specifically, the trial court asserted:

> Mr. Ebert described the governmental approvals that were necessary to permit [BVA] to construct the sewer line and

connect to the public sewer system, the timelines that are reasonably required in the normal course of business to secure those approvals, and the preparations necessary to have been made beforehand by any applicant, including [BVA], to avoid unnecessary delays. Such include timely preparation of the required sewer connection plan, anticipated revisions to the plan often sought by municipal officials, timely preparation of easement descriptions for the sewer lines, payment of connection fees and like considerations attendant to every such connection. It remains the applicant's obligation to insure prompt and timely preparation and completion of these items in meeting required deadlines imposed by the [c]ourt.

Mr. Ebert opined that had [BVA] proceeded with due anticipation of issues that commonly arise in most cases involving sewer approvals for connection to a public sewer system, preparation of plans and documents attendant thereto, and prompt attention to required details, the connection of [BVA']s Shopping Center to public sewer could and would have been completed within the timelines set by the Court. Transcript, 10/24/16, pp. 20 et seq. In other words, the required sewer connection should have been completed long before it was, without the necessity of repeated contempt citations and [Carlino's] incurrence of fees and costs in the enforcement of the [c]ourt's Orders. Indeed, Mr. Ebert's testimony evidences the accuracy of our prior conclusions, expressed in our Orders of September 3, 2014[,] and February 10, 2016, that over the course of time during which [BVA] has been subject to those Orders, its conduct has been intentionally dilatory, obdurate and vexatious, warranting the award of counsel fees and costs.

Order of Court, 2/22/17, at 2, n.1 ¶ 18.

The trial court ultimately concluded Carlino's invoices totaling $57,042.00 for counsel fees incurred, fees paid to professional witnesses called to testify, and costs associated with the contempt petitions and court hearings related thereto, to be reasonable and awarded that sum as a sanction.

This Court has held that an award of counsel fees may be a sanction following a finding of contempt, or may be awarded to a party pursuant to 42 Pa.C.S.A. § 2503(7). Thus, an award of counsel fees under 42 Pa.C.S.A. § 2503 is distinct from a finding of civil contempt that might include sanctions in the form of counsel fees. ***Wood v. Geisenhemer–Shaulis***, 827 A.2d 1204, 1207 (Pa.Super. 2003). Following our review of the record and relevant notes of testimony, we find support for the trial court's award. Appellant essentially askes this Court to substitute its judgment by altering the award, which we cannot do absent an abuse of discretion. ***Boehm v. Riversource Life Ins. Co.***, 117 A.3d 308, 335 (Pa.Super. 2015) (citation omitted). Thus, no relief is due on this claim.

In its fourth argument, BVA posits the trial court erred by striking the Cropper affidavit, its praecipe to incorporate the entire record from its appeal of Carlino's approved 2014 preliminary plan, and its New Matter filed in response to Carlino's motion for summary judgment. The trial court explained its decisions in this regard as follows:

> No.1.a. Order of April 19, 2016[,] striking John R. Cropper's affidavit, filed on January 6, 2016[,] in support [BVA's] summary judgment motion. Cropper is a principal of [BVA]. The thrust of the affidavit was to add weight to [BVA's] contention that when the late Frank E. Watters and Beatrice S. Watters sold John Cropper's father the Brandywine parcel in 1994, the parties had the intention to cooperatively develop both parcels, which would include perpetuation of the on-site sewer system and access road located within the easements provided for in the Cross Easement Agreement for the benefit of both parcels. At that time, there was no plan of development of the Watters' Parcel, so that any such presumed intention was precatory only, and not binding on the

Watters. Aside from the fact that Cropper's affidavit was self-serving, its contents added no factual underpinning to [BVA's] case, since the Agreement contains a specific provision concerning the parties['] cooperation as it relates to "the purposes of the easements" and to the granting of "such additional easements as may be required to facilitate" the implementation of [BVA's] 1994 subdivision and land development plan for development of [BVA's] shopping center, identified in the First paragraph of the Agreement's recital. Cross Easement Agreement, paragraph #11.E. Brandywine has consistently argued that it enjoys vested rights in the Cross Easement Agreement and that precludes Carlino's development plan for the Watters' Parcel. That the easements are not immutable is borne out, among other provisions of the Agreement, by its terms that address the on-site sewer facilities located on the Watters' Parcel that, until recently, served [BVA's] property. Those terms required [BVA] to connect its shopping center to the Township's public sewer system when public facilities become available. Cross Easement Agreement, paragraphs 9 & 11. It was clear to this court that there is no provision in the Agreement that requires Carlino's development of the Watters' Parcel in any manner contemplated or dictated by [BVA].

No. 1.b. Order of February 12, 2016. [BVA] filed three documents in response to Carlino's summary judgment motion ("SJM"). First, on the presumptive authority of Pa.R.C.P. 1019(g), a praecipe directing the Prothonotary to incorporate into the declaratory judgment action the record from [BVA's] 2015 appeal of Carlino's 2014 preliminary land development plan, *ChesCo Docket No. 2015-1448-MJ*; second, and Answer to the SJM that raised "New Matter, allegedly pursuant to Pa.R.C.P. 1035.3(b); and third, a brief in support. The New Matter alleged the intentional violation of the Cross Easement Agreement by Carlino and the Township in the former's submission of land development plans and the latter's approval of those plans that ignored the Agreement. [BVA] has consistently advanced that same on-going allegation in the land use proceedings before the Township Supervisors and the appeals therefrom, and sought introduction in the declaratory judgment actions of the records made before the Supervisors. We have previously ruled in the zoning appeals that disputes over easement rights are not the proper subject of a zoning or land development proceeding, but rather must be decided in a separate court action. [citations omitted].

Among its further contentions, [BVA] has argued, incorrectly, that our September 21, 2011[,] Order consolidated

not only the cross-declaratory judgment actions, but also a land use appeal then pending, thereby allowing it to make the zoning record a part of [BVA's] declaratory judgment action. Order dated 9/21/2011. The latter Order, however, consolidated only the declaratory judgment actions "for all purposes". The zoning appeal was consolidated only for administrative purposes, such as administrative conferences and oral argument. All of the facts germane to the Cross Easement Agreement were present in the record when [BVA] sought to include the zoning appeal record and other New Matter allegations, which had nothing to do with the court's interpretation of the Cross Easement Agreement sought in the declaratory judgment actions. . . .

Supplemental 1925 Opinion, filed 11/20/17, at 5-7.

Upon our review, we discern no error. First, the Cropper Affidavit is stamped as having been filed on January 6, 2016, after BVA had filed its response to Carlino's Motion for Summary Judgment. In its motion to strike the affidavit, Carlino argued the 1993 Agreement of Sale between BVA and the Watters constituted an integrated document and, therefore, the affidavit was inadmissible, extrinsic evidence under the parol evidence rule. The trial court's Order striking the affidavit was proper. **See Yocca v. Pittsburgh Steelers Sports, Inc.**, 578 Pa. 479, 854 A.2d 425, 436 (2004) (holding, *inter alia*, stadium builder licenses represented the parties' entire contract; thus, the parol evidence rule barred the admission of the stadium builder licenses brochure).

In addition, its May 2, 2016, Order reveals the trial court considered documents from the land use appeal which BVA had attached to its Motion for Summary Judgment and further provided BVA with an opportunity to specifically identify other parts of the record it deemed to be germane to the

J-A22035-18

court's consideration of BVA's response to the Motion for Summary Judgment.

Specifically, the trial court stated:

> We have no intention of combing through a lengthy zoning record to decipher what may be relevant evidence that creates an issue of fact relevant and material to the rights and liabilities of the parties under the Cross Easement Agreement. [BVA] admits its praecipe to incorporate the entire record may be "seen as excessive". **See** Motion for Reconsideration, para. 11. It clearly is excessive. It appears that [BVA] has attached parts of the Supervisor's hearing record to its Answer to Carlino's SJM. **See** Exhibits A & B. If there are other parts of the land use appeal record to which [BVA] wishes to direct the court's attention that are claimed by it to create a genuine issue of fact relevant and material to the defense of the Carlino Defendants' SJM it may do so by affidavit. This means exact specification of relevant pages of identified witnesses' testimony, exhibits and parts of plans that are claimed to be relevant. See *Boulton v. Starck*, 369 Pa. 45, 85 A.2d 17 (1951). The Carlino Defendants may appropriately respond by tiled objection.

Order of Court, filed 5/2/18, at 3 n.1 Our review of the record has failed to reveal any indication that BVA thereafter specifically identified portions of the zoning record for the trial court's consideration in response to Carlino's summary judgment motion.

Finally, as the trial court notes, it did not strike BVA's new matter in its entirety. To the contrary, the court granted Carlino's motion to strike new matter only to the extent that it asserted new cause of action in violation of Pa.R.C.P. 1033.[9] Thus, this claim fails.

---

[9] This Rule provides, in relevant part:

- 26 -

BVA next argues the trial court abused its discretion in failing to find the August 20, 2014, contract between Carlino and the Township was illegal and in violation of Carlino's easement obligations. In its appellate brief, Carlino asks this Court to find this claim waived for BVA's failure to raise it before the trial court. Brief of Appellee at 60.

On May 9, 2018, Carlino filed with this Court its "Motion to Strike [BVA's] Reproduced Record and Appeal" wherein it requested that we, *inter alia*, strike certain documents BVA has included in the Reproduced Record associated with this appeal. These documents were not filed in the trial court docket in BVA's declaratory judgment action, nor did BVA request the trial court to consider them in Answer to Carlino's summary judgment motion. In addition, as Carlino points out, although it included the six Exhibits in its Reproduced Record, BVA did not enumerate these documents on its Designation of Contents of Reproduced Record which it served on Carlino on February 12, 2018. Rather, these documents apparently were part of a

---

a) A party, either by filed consent of the adverse party or by leave of court, may at any time change the form of action, add a person as a party, correct the name of a party, or otherwise amend the pleading. The amended pleading may aver transactions or occurrences which have happened before or after the filing of the original pleading, even though they give rise to a new cause of action or defense. An amendment may be made to conform the pleading to the evidence offered or admitted.

Pa.R.C.P. No. 1033(a).

separate condemnation proceeding to which Carlino is not a party that recently was decided in the Township's favor by the Commonwealth Court. *See* Motion at 2-3; Condemnation of Fee Simple Title to 0.069 Acres of Vacant Land and Certain Easements No. 1409 C.D. 2017, unpublished memorandum (Cmwlth.Ct. filed July 2, 2018), *reargument denied*, Aug. 14, 2018).[10] While it attached a copy of the Memorandum of Understanding to its brief filed in the declaratory judgment action on April 30 2015, BVA did not ask that the trial court to declare the Memorandum void. As a result, the trial court did not have an opportunity to consider this aspect of BVA's claim prior to the time its notice of appeal was filed.

"Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Our review of the record reveals that BVA raised the instant claim for the first time in its Rule 1925 concise statement. *See* Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925, filed 11/6/17, at ¶4(f). However, "[a]n issue raised for the first time in a concise statement is waived. *Beemac Trucking, LLC v. CNG Concepts, LLC*, 134 A.3d 1055, 1058 (Pa.Super. 2016) (citation omitted). Further, "appellate courts normally do not consider matters outside the record or matters that involve a consideration of facts not in evidence. Most importantly, appellate courts do not act as fact finders, since to do so

---

[10] Carlino points out the sticker placed on each document bears the designation "Conees" which seemingly refers to BVA as the condemnees.

would require an assessment of the credibility of the testimony and that is clearly not our function." **Commonwealth v. Kennedy**, 2016 WL 634849, at *3 (Pa.Super. Feb. 17, 2016) (citing **Commonwealth v. Grant**, 813 A.2d 726, 733–34 (Pa. 2002) (case citations and internal quotation marks omitted)). In light of the foregoing, we find this issue to be waived and, accordingly, grant Carlino's Motion to Strike the documents included in BVA's Reproduced Record at pages 1241a through 1331a.

BVA's final claim alleges the trial court erred and abused its discretion in delaying its decision in BVA's declaratory judgment action until after the decision in the condemnation case, at which time it asserted BVA's claims were moot. Brief for Appellant at 64. BVA posits that "[i]t would appear that the [c]ourt intentionally delayed decision to surmount [BVA's] argument in its Answer to [Carlino's] summary judgment motion that [BVA] continues to own those easements and Carlino's continued planning is, therefore, in derogation of [BVA's] rights." **Id**. at 60.

The trial court explained why BVA's contention is incorrect as follows:

> No. 3. [BVA] claims that I abused my discretion in waiting six years to decide the parties' respective claims, and then asserting they were moot as a result of the condemnation. That statement is incorrect. The sewer easement, a principal subject of the declaratory judgment actions, was resolved by my order for specific performance described in my September 20, 2017[,] Opinion, while the driveway access and stormwater management easements were directly impacted by the Township's Declaration of Taking discussed more fully in my September 20, 2017[,] Opinion. [BVA] was required by the Cross Easement Agreement to connect its shopping center to the Municipal Authority's public sewerage system when those facilities were extended by the

- 29 -

Municipal Authority into the area where [BVA's] shopping center is located. The Pennsylvania Department of Environmental Protection ("PADEP") approved the municipal system's extension, which triggered [BVA's] connection obligation. Following inception of these actions, the pleading stage persisted through the end of 2012, during which Carlino moved for summary judgment in its declaratory judgment complaint, which I denied. Evidentiary hearings followed. On January 11, 2013, Carlino filed a Petition seeking specific performance of the Agreement, the provisions of which required [BVA] to connect is property to the Township Municipal Authority's public sewer system and abandon the on-site septic system located within the sewer easement on the Watters' parcel that served [BVA's] shopping center. [BVA] fought this requirement tooth and nail, which led Carlino to file contempt motions against [BVA], in turn requiring this court to conduct evidentiary hearings. Ultimately, I entered an Order on August 8, 2013[,]requiring [BVA] to physically connect its shopping center to the Municipal Authority's public sewer system. [BVA] appealed to Superior Court of September 10, 2013. *Superior Court Docket No. 2558 EDA 2013*. On December 9, 2014[,] the Superior Court returned the appeal to this court, concluding that, contrary to [BVA's] contention, the lower court's August 8, 2013[,] Order was not a final order.[11] In the interim, Carlino filed additional

---

[11] This unpublished memorandum decision, referenced above, was, in fact, filed on October 20, 2014. Therein, this Court determined it lacked jurisdiction to hear the appeal. In doing so, we reasoned as follows:

Although this case began as two declaratory judgment actions, Carlino later filed a second amended complaint including non-declaratory judgment claims: ejectment, an injunction, and damages for breach of contract. The order appealed from in this case granted specific performance, in response to a petition for specific performance. It did not declare rights under the Declaratory Judgments Act, even though Carlino improperly requested declaratory relief and specific performance in a single count of its second amended complaint. Moreover, specific performance and declaratory relief are distinct remedies with distinct purposes.

Carlino filed a petition for specific performance seeking relief on only one count of a multi-count complaint. In response, the trial court granted specific performance- not declaratory relief.

contempt petitions against [BVA] seeking counsel fees arising from [BVA's] persistent refusal to connect to the public sewer system. On September 22, 2015, [BVA] still not having timely complied with our August 8, 2013, Order, we conducted an administrative conference, which culminated in our Order of September 22, 2015, that established a new schedule with which [BVA] was required to comply in connecting its shopping center to the public sewage system. This was followed by a further motion filed by Carlino on January 7, 2016[,] seeking again to hold [BVA] in contempt and for the imposition of sanctions, in which Carlino alleged [BVA] had refused to complete connection to the public sewer system and was intentionally "dragging its feet." [BVA] encountered construction difficulties in complying, but ultimately, connected, and undertook removal of the on-site septic system and its decommissioning pursuant to [PaDEP] regulations.

　　　As discussed above, during the foregoing proceedings, [BVA] filed preliminary objections to the Township's November 17, 2014[,] Declaration of Taking, which condemned the access and drainage easements provided for in the Cross Easement Agreement. Multiple hearings were required to complete testimony before a decision could be made on those objections by another judge of this court on September 7, 2017. In terms of the declaratory judgment actions, a decision by this court as to the Township's condemnation of [BVA's] access easement would not have foreclosed [BVA's] right to file preliminary objections to the taking. Consequently, I deferred to Judge Griffith on that issue, and awaited his determination of that action before issuing the instant decision.

Supplemental 1925 Opinion, filed 11/20/17, at 10-13 (some brackets in

original).

---

Because the trial court's order granting specific performance is a partial adjudication, it is interlocutory and not appealable.

***Carlino E. Brandywine, L.P. v. Brandywine Vill. Assocs.***, No. 2558 EDA 2013, unpublished memorandum at 4 (Pa.Super. filed Oct. 20, 2014) (footnotes omitted).

In light of the longevity and complexity of the proceedings giving rise to the declaratory judgment actions and the trial court's September 20, 2017, decision thereon, we find no merit to BVA's claim the trial court intentionally delayed its decision. As the above summary of the activity in the trial court evinces, the court entered orders pertaining to the myriad pleadings filed by the parties as their dispute progressed over the course of numerous years. Applying the proper standard of review, we discern no error.

Order affirmed. Carlino's Motion to Strike [BVA's] Reproduced Record is granted. Jurisdiction is relinquished.

Judge Nichols joins the Opinion.

P.J.E. Bender concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/16/18