J-A04023-17

2017 PA Super 265

| HUGH J. MURRAY SR. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| WILLISTOWN TOWNSHIP | |
| Appellee | No. 2319 EDA 2016 |

Appeal from the Order Entered June 12, 2017
In the Court of Common Pleas of Chester County
Civil Division at No(s): 14-12462

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

OPINION BY SOLANO, J.: **FILED AUGUST 17, 2017**

Appellant Hugh J. Murray, Sr. appeals from the trial court's June 12, 2017 order granting summary judgment in favor of Appellee Willistown Township and reforming the parties' contract. We affirm.

The trial court set forth the facts of this case as follows:

This dispute arises out of the voluntary retirement of plaintiff Hugh Murray, Sr. from his position as Township Manager of Willistown Township (the "Township") in 2011 after eight (8) years of employment. The material facts . . . are not in dispute.

Murray was appointed Willistown's township manager in 2003. Prior to that time, Murray held the position of Chief of Police for the Township. Following Murray's announcement of his intention to retire, the Township and Murray came to terms on an agreement whereby the Township agreed to provide Murray with certain severance benefits. Murray and the Township entered into an "Agreement and General Release of All Claims" (the "Agreement") on December 30, 2011. The Agreement, which Murray had reviewed by counsel, provided for Murray to receive

---

[*] Retired Senior Judge assigned to the Superior Court.

some benefits in retirement, including dental, medical and life insurance benefits.[1] The provision relating to Murray's life insurance benefits is what brings the parties before the court.

At the time of his retirement, Murray had group life insurance in his capacity as Township Manager in the amount of $375,000. The Agreement at Section 2(a) therefore provided as follows:

> 2. Severance Benefits. The Employer agrees to provide the employee the following severance benefits:
>
> a. Employee shall be eligible to continue to participate, at the Employer's expense, in the present group life insurance plan ($375,000) offered by the Employer as may be carried from time to time for all eligible employees on the same terms and conditions that the Employee currently participates.

Unbeknownst to either party, under the prevailing group plan an employed township manager is considered a "Class 1 Member" eligible for a $375,000 group life benefit. However, a retiree, such as Murray, is only eligible for benefits in the amount of $20,000, retirees being considered by the insurer as "Class 4 Members." Upon learning of the policy's restrictions, and advising Murray of the same, the Township attempted to secure an individual insurance policy for Murray for the amount specified in the parties' Agreement, but ultimately concluded that it was unable to make such a purchase under its enabling statute.[2]

---

[1] In exchange for these benefits, Murray agreed to "release[] and discharge[] [the Township] . . . from all claims, liabilities, demands and causes of action known or unknown, fixed or contingent, which [Murray] may have against [the Township] as a result of this separation from employment." Agreement, ¶ 5.

[2] As a township of the second class, Willistown is governed by the Second Class Township Code, Section 1512(d) of which provides, in relevant part:

> The board of supervisors may contract with any insurance company, nonprofit hospitalization corporation or nonprofit

*(Footnote Continued Next Page)*

Thereafter, the Township advised Murray that it could only provide him with $20,000 in life insurance benefits under the group policy and that it was not permitted to secure an individual policy for him.  Murray filed suit asserting claims for breach of contract, specific performance, a claim under the Wage Payment and Collection Law (which was later dismissed per stipulation) and unjust enrichment.[3]  The Township also filed suit asserting a count for declaratory judgment which sought a declaration that the Agreement's life insurance provision in Section 2(a) was invalid as a matter of law and, in the alternative, a claim for contract reformation of Section 2(a), replacing the amount listed therein with $20,000.  The two actions, Docket Nos. 2014-12462 and 2014-12086, were consolidated under Docket No. 2014-12462.

Trial Ct. Order, 6/29/16, at 2-3 n.1 (citations to the record omitted).[4]

On March 15, 2016, the Township filed a motion for summary judgment on all parties' claims.  After considering the briefs submitted by the parties, the trial court granted the Township's motion on June 29, 2016.  The court granted the Township's request for reformation of the Agreement

*(Footnote Continued)* ————————

medical service corporation to insure its supervisors . . . , employe[e]s and their dependents under a policy or policies of **group insurance** covering life, health, hospitalization, medical service or accident insurance.

53 P.S. § 66512(d) (emphasis added).  The Township construed this provision to mean that it was authorized to purchase only group life insurance.  Murray does not contest that interpretation.

[3] Murray sought damages in an amount that would enable him to purchase $375,000 in life insurance or, alternatively, a court order requiring the Township to purchase life insurance coverage for him in an amount not less than $375,000.  Murray did not seek contract reformation.

[4]  The trial court explained its order in a lengthy footnote.  All citations to pages of the June 29, 2016 order following page 1 are to the text of footnote 1 of that order.

and reformed Section 2(a) to read: "Employee shall be eligible to continue to participate, at the Employer's expense, in the present group life insurance plan ($20,000) offered by the Employer, as may be carried from time to time for all eligible employees." Order, 6/29/16, at 1.

The trial court found that there had been a mutual mistake of fact: when they signed the contract, the parties mistakenly believed that Murray would be eligible for life insurance in the amount of $375,000 under the terms of the group plan. Trial Ct. Order, 6/29/16, at 4-5. The court held that it had authority to reform the contract based on that mutual mistake. *Id.* at 4 (citing *Smith v. Thomas Jefferson Univ. Hosp.*, 621 A.2d 1030, 1032 (Pa. Super.), *appeal denied*, 631 A.2d 1009 (Pa. 1993)). The trial court rejected Murray's argument that he was entitled to $375,000 in individual life insurance, reasoning that (1) the Township did not have the statutory authority to purchase individual life insurance for any current or former employee; and (2) the Township was not bound under the Agreement to purchase individual life insurance for Murray. *Id.* at 3-4. Murray filed a timely appeal on July 25, 2016.

In its June 29, 2016 order, the trial court did not expressly enter summary judgment on the Township's claim for a declaratory judgment or on any of Murray's claims. Until the trial court "disposes of all claims and of all parties," there is no final order that is appealable to this Court. Pa.R.A.P. 341(b)(1). Therefore, on June 5, 2017, this Court ordered the trial court to

- 4 -

"either amend the summary judgment order docketed on June 29, 2016 to enter judgment on all of the claims by each party in the case, or . . . inform this Court that it shall not now amend the order because some claims remain outstanding." In response, on June 12, 2017, the trial court amended its June 29, 2016 order to (1) grant summary judgment in favor of the Township on its contract reformation claim; (2) deny summary judgment as to the Township's declaratory judgment claim because it was moot; and (3) grant summary judgment in favor of the Township on all of Murray's claims. Murray's appeal is now properly before this Court. *See* Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof").[5]

On appeal, Murray raises the following issue:

Did the trial court err as a matter of law or abuse its discretion in holding on summary judgment that [Murray] was only entitled to $20,000 of life insurance coverage and no other relief when the

---

[5] Because the parties agree that Section 1512(d) of the Second Class Township Code does not permit the Township to offer an individual policy of insurance, this case does not "draw[] into question the application, interpretation or enforcement" of that statute and therefore is not within the jurisdiction of the Commonwealth Court. *See* 42 Pa.C.S. § 762(a)(4). Both parties agree that this Court has jurisdiction. *See* Township's Brief at 1; *see also* 42 Pa.C.S. § 704(a) ("The failure of an appellee to file an objection to the jurisdiction of an appellate court within such time as may be specified by general rule, shall, unless the appellate court otherwise orders, operate to perfect the appellate jurisdiction of such appellate court, notwithstanding any provision of this title, or of any general rule adopted pursuant to section 503 (relating to reassignment of matters), vesting jurisdiction of such appeal in another appellate court").

- 5 -

clear and undisputed intention of the parties was that [Murray] was to receive $375,000 in life insurance coverage or, in the alternative, equitable relief of equivalent value thereto[?]

Murray's Brief at 5.

This Court's standard of review is deferential:

Appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion. The scope of review of a final decree in equity is limited and [the decree] will not be disturbed unless it is unsupported by the evidence or demonstrably capricious.

*Vautar v. First Nat'l Bank of Pa.*, 133 A.3d 6, 12 (Pa. Super. 2016) (*en banc*) (brackets and citation omitted).

In his appellate brief, Murray does not dispute the trial court's conclusion that there was a mutual mistake of fact[6] or the trial court's holding that it had authority to reform the contract. **See** Murray's Brief at 13, 16. Murray instead argues that the reformation ordered by the trial court was inequitable.[7] In Murray's view, the trial court's order should have

_____

[6] In his response to the Township's motion for summary judgment, Murray had denied that there was a mutual mistake. **See** Murray's Resp. to Mot. for Summ. J. at ¶ 14. Murray no longer advances that position, and states in his brief, "[t]he trial court was correct in determining that the Agreement between the parties was based upon a mutual mistake." Murray's Brief at 13.

[7] Murray also contends that the court erred in "imposing its relief without any evidence before the court as to other available and reasonable option[s] for relief," Murray's Brief at 16, and by "fail[ing] to hear evidence." **Id.** at 13. However, Murray has identified no disputed issues of material fact that should have precluded the entry of summary judgment. **See** Pa.R.Civ.P. 1035.3(a). No evidentiary hearing was required. **See Molineux v. Reed**, 532 A.2d 792, 793 (Pa. 1987).

been based on some "other available and reasonable option," such as requiring the Township to pay (1) to Murray's estate, $375,000 upon Murray's death; (2) to Murray, an amount equal to the sum of the annual premiums on an individual policy for $375,000 in life insurance over some reasonable number of years[8]; or (3) to Murray, an annual amount equal to the premium on an individual policy for $375,000 in life insurance until his death or until total premiums of $375,000 have been paid. *See* Murray's Brief at 16-17.

We begin with the threshold question of whether the trial court had the authority to reform the contract after it determined that $375,000 in group life insurance could not be provided to Murray. As noted, Murray's appeal does not challenge this authority and instead contends only that the specific reformation ordered by the trial court was insufficient to satisfy his needs. Both parties agree that contract reformation is an appropriate equitable remedy in this case: the Township sought such reformation in its complaint; and in his appellate brief, Murray insists that in the situation presented here, "the court is to equitably 'reform' the contract so that the intentions of the parties are achieved to the greatest extent possible." Murray's Brief at 13. However, neither party has cited any case in which a Pennsylvania court has "reformed" a contract in the way that was done here, and our own research

_____

[8] Murray says the premiums would have been $15,750 per year in 2013, but they increased as Murray aged. Murray's Brief at 11.

has uncovered no such authority. Before we can address Murray's challenge to the precise reformation relief that the trial court ordered, we must determine the nature and propriety of the type of reformation remedy employed by the trial court, since the legal basis for such relief necessarily will bear on how we address Murray's challenge to the scope of the trial court's contractual "reform."

The trial court ordered reformation because the parties made a mutual mistake about the availability of group insurance to cover Murray after he retired. We have stated:

> The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party. A mutual mistake occurs when the written instrument fails to set forth the true agreement of the parties. The language on the instrument should be interpreted in the light of subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

*Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1107-08 (Pa. Super. 2006) (quoted citation omitted), *appeal denied*, 919 A.2d 958 (Pa. 2007). Mutual mistake regarding an essential term of a contract may provide a basis for the contract's rescission if (1) the mistake relates to "an essential fact which formed the inducement to [the contract]," and (2) "the parties [can be] placed in their former position with reference to the subject-matter of [the contract]." *See Vrabel v. Scholler*, 85 A.2d 858, 860 (Pa. 1952); *Gocek v. Gocek*, 612 A.2d 1004, 1006 (Pa. Super. 1992). Alternatively, if

the same conditions are met, "[c]ourts can reform a contract entered under mutual mistake." ***Allen-Myland, Inc. v. Garmin Int'l, Inc.***, 140 A.3d 677, 693 (Pa. Super. 2016) (cited quotation omitted); ***RegScan, Inc. v. Con-Way Transp. Servs., Inc.***, 875 A.2d 332, 340 (Pa. Super. 2005) ("If a mistake is demonstrated, the contract may be reformed, or the injured party may avoid his or her contractual obligations"); ***see also Smith***, 621 A.2d at 1032 ("to obtain reformation of a contract because of mutual mistake, the moving party is required to show the existence of the mutual mistake by evidence that is clear, precise and convincing").[9]

We most commonly have allowed reformation of mistaken contract provisions in cases of "scriveners' errors," where the parties' writing mistakenly failed to record their agreed-upon intentions. ***See Daddona v. Thorpe***, 749 A.2d 475, 487 (Pa. Super.) ("[a] mutual mistake occurs when the written instrument fails to . . . set forth the 'true' agreement among the parties"), ***appeal denied***, 761 A.2d 550 (Pa. 2000); ***see also Bollinger v. Central Pa. Quarry Stripping & Constr. Co.***, 229 A.2d 741, 742 (Pa. 1967); ***Bugen v. New York Life Ins. Co.***, 184 A.2d 499, 500 (Pa. 1962). In such situations, the court may reform the contract document so that its language conforms to what the parties intended. ***Bollinger***, 229 A.2d at 742. The error here, however, is not a drafting error; the written document

---

[9] Because the parties agree that there was a mutual mistake, we need not consider whether the evidence is sufficient to prove a mistake under ***Smith***.

faithfully records what the parties intended. Rather, the error results from the parties' failure to understand that the insurance that they contemplated and for which they provided in their written contract document was not available under the Township's group insurance arrangement. Reformation of the contract therefore can be accomplished only by changing it to provide for a different insurance benefit from what the parties intended when they entered into their agreement. The parties have not cited and we have not found any Pennsylvania case law authorizing a reformation of that type.

The American Law Institute's Second Restatement of Contracts suggests, however, that after discovery of a mistake, a remedy akin to reformation may be available in some situations other than drafting errors "on such terms as justice requires[,] including protection of the parties' reliance interests." Restatement (Second) of Contracts § 158(2) (1981).[10] A comment explains:

---

[10] Sensitive to the rules relating to reformation in cases of scriveners' errors, the Restatement is careful to distinguish traditional reformation from the ability to fix a mistaken contract term under Section 158. *See* Restatement (Second) of Contracts § 155 cmt. b ("The discretionary relief authorized under the rule stated in § 158 may involve some reshaping of the contract duties by the court but is different from reformation"). Section 158 equates the relief that it authorizes more closely to the necessary implication of an implied, essential contract term under Section 204. Restatement (Second) of Contracts § 158 cmt. c. We do not believe these technical distinctions limit the availability of relief in this case. Because the trial court referred to its remedy as "reformation," we use that same term in this opinion to refer both to traditional reformation and to the remedies discussed by Section 158(2) of the Second Restatement.

> Sometimes the party who is not adversely affected by a mistake can, by assenting to a modification of the contract, eliminate the effect of the mistake on the agreed exchange. He should generally be allowed to do so and thereby to preclude avoidance by the party who would otherwise be adversely affected. A court may, under Subsection (2), grant the party who has not been adversely affected what is, in effect, an option to enforce the contract on new terms.

*Id.* § 158 cmt. *c*.[11] This Restatement provision has not previously been considered by our appellate courts,[12] but the American Law Institute describes it as a "specific application" of principles under Section 204 of the Second Restatement, which provides that a court may imply necessary terms of a contract that have not been stated in the written document. *See id.*, Reporter's Note; Restatement (Second) of Contracts § 204 & cmt *a*. The idea is that if a mutual mistake voids an essential contract provision, a court should be able to imply a new provision that will replace its essential terms, so long as the party not adversely affected by the mistake assents to the modification. *See id.* § 158 cmt. *c*. Pennsylvania courts have employed Section 204's "doctrine of necessary implication as a means of avoiding

_____

[11] *See also* Restatement (Second) of Contracts § 152 cmt. *d* ("A party may choose to seek relief by means of reformation even though it makes his own performance more onerous when, absent reformation, the contract would be voidable by the other party").

[12] Where, as here, the Supreme Court of Pennsylvania has neither adopted nor rejected a Restatement provision, we are free to adopt it in an appropriate case. *See Newell v. Montana W., Inc.*, 154 A.3d 819, 824 n.7 (Pa. Super. 2017). We note that "Pennsylvania courts regularly employ the Restatement (Second) of Contracts when resolving contract disputes." *Hart v. Arnold*, 884 A.2d 316, 333 (Pa. Super. 2005), *appeal denied*, 897 A.2d 458 (Pa. 2006).

injustice by inferring contract provisions that reflect the parties' silent intent." *Stamerro v. Stamerro*, 889 A.2d 1251, 1259 (Pa. Super. 2005) (citation omitted); *see Banks Eng'g Co. v. Polons*, 752 A.2d 883, 886 n.4 (Pa. 2000) (plurality opinion); *Hodges v. Pa. Millers Mut. Ins. Co.*, 673 A.2d 973, 974-75 (Pa. Super. 1995); *Slater v. Pearle Vision Ctr., Inc.*, 546 A.2d 676, 679 (Pa. Super. 1988).

Although the parties have focused on their mutual mistake regarding the availability of insurance, the issue here more closely resembles one of impracticability of performance resulting from the unavailability of the desired coverage for Murray under the Township's group insurance policy. *See generally Hart v. Arnold*, 884 A.2d 316, 334-35 (Pa. Super. 2005), (discussing impracticability of performance), *appeal denied*, 897 A.2d 458 (Pa. 2006).[13]  In this situation too, the Second Restatement provides that a

---

[13] Indeed, the parties' "mistake" was in believing that group insurance in the amount of $375,000 was available for Murray after he retired and, therefore, in not realizing that performance of the contract's provision for such insurance was impracticable.  Contractual impracticability usually results from some supervening event after the parties entered the contract.  *See* Restatement (Second) of Contracts § 261; *Hart*, 884 A.2d at 334.  It can also result, however, from a condition existing at the time of the contract's formation.  *See* Restatement (Second) of Contracts § 266; *ALCOA v. Essex Group, Inc.*, 499 F. Supp. 2d 53, 72 (W.D. Pa. 1980).  Section 266 of the Second Restatement, which has not been discussed in any reported Pennsylvania appellate decision, states that such an impracticability excuses performance of a contractual obligation if the obligor had no reason to know of it and the condition was not the obligor's fault. *See id.* § 266(1).  The trial court stated that the unavailability of $375,000 in life insurance for Murray under the applicable group policy was "[u]nbeknownst to either party," Trial Ct. Order, 6/29/16, at 2, but it did not address whether either

*(Footnote Continued Next Page)*

remedy akin to reformation is permissible to avoid injustice. Restatement (Second) of Contracts § 272. The Restatement explains that this result is merely another specific application of the principles of Section 204:

> Under the rule stated in § 204, when the parties have not agreed with respect to a term that is essential to a determination of their rights and duties, the court will supply a term that is reasonable in the circumstances. Since it is the rationale of this Chapter that, in a case of impracticability or frustration, the contract does not cover the case that has arisen, the court's function can be viewed generally as that set out in § 204 of supplying a term to deal with that omitted case.

*Id.* § 272 cmt. *c*. We have previously cited Section 272 with approval, although in support of restitutionary relief, not reformation. *See Hart*, 884 A.2d at 335.[14]

Upon consideration of these authorities, we hold that the trial court did not err in reforming the parties' Agreement. Specific performance of the contract as written is not possible. Without reformation, the only remedy would be to void the unenforceable life insurance provision, leaving Murray

*(Footnote Continued)* —————————

party had reason to know of the unavailability. The Township certainly should have known of the policy's terms, and, as Township Manager of the Township from 2003 until he retired, it would seem that Murray should have known of those terms as well. Because the question here is not whether either party may avoid an obligation under the Agreement, but whether the parties may have the Agreement reformed (a form of relief both parties advocate), we do not believe the knowledge issue is determinative here.

[14] In **ALCOA**, a federal district court, applying Indiana law, held that based on mutual mistake, impracticability, and frustration of purpose, it could modify the parties' contract. 499 F. Supp. 2d at 78-80. The court explained that a remedy modifying a term of the contract would "preserve the purposes and expectations of the parties" better than any other remedy and was "essential to avoid injustice." *Id.* at 80.

with no insurance relief at all; Murray has made clear that he opposes that remedy. Neither party challenges the trial court's ability to order reformation, and, indeed, both parties advocate in favor of such relief. Although the facts presented here may not fit within the traditional framework of a mistake resulting from erroneous drafting, they do fit within the broader parameters of the reformation remedies that have been recognized under Sections 158(2) and 272 of the Second Restatement, both of which derive from the power to imply contract terms under Section 204 when necessary to effectuate the parties' intent. Exercise of that power is consistent with Pennsylvania law. In light of these authorities, and particularly in light of the parties' mutual advocacy in favor of reformation to restore an essential term of their agreement, we hold that, on these unique facts, it was proper for the trial court to reform the contract.

The next question — and the nub of this case — is whether the trial court properly exercised its discretion in formulating the reformation relief that it ordered. Reformation is an equitable remedy. ***Potteiger v. Fid.-Phila. Trust Co***., 227 A.2d 864, 871 (Pa. 1967). "[A] court of equity has broad discretion to decide what relief should be granted." ***Jackson v. Hendrick***, 321 A.2d 603, 606 (Pa. 1974). Indeed,

> Equitable remedies . . . are distinguished by their flexibility, their unlimited variety, their adaptability to circumstances, and the natural rules which govern their use. There is in fact no limit of their variety and application; the court of equity has the power of devising its remedy and shaping it so as to fit the changing

circumstances of every case and the complex relations of all the parties.

*Id.* at 606 n.8 (alteration in original) (citation omitted). However, "a court of equity has no more right than has a court of law to act on its own notion of what is right in a particular case and must be guided by the established rules and precedents." *East Hempfield Twp. v. Brubaker*, 828 A.2d 1184, 1188 (Pa. Cmwlth. 2003) (brackets and citation omitted). Equity must follow the law. *Bauer v. P.A. Cutri Co. of Bradford*, 253 A.2d 252, 255 (Pa. 1969) (stating, "a court of equity follows and is bound by rules of law, and does not use equitable considerations to deprive a party of his rights at law"); *Kapcsos v. Benshoff*, ____ A.3d ____, No. 227 EDA 2016, 2017 WL 2806294, at *10 (Pa. Super., June 29, 2017) ("[E]quitable discretion may not be exercised merely to negate a controlling rule of law. 'Equity follows the law.'" (quoted citation omitted)). Murray argues that the reformation ordered by the trial court did not conform to equitable principles because it unfairly failed to provide for Murray to receive $375,000 in life insurance. We disagree.

The trial court was faced with the task of trying to protect the parties' reliance interests under a provision of the contract that could not be implemented as written. In offering limited guidance on this task, Comment *c* to Section 272 of the Second Restatement explains: "The question under this Section is whether the court can salvage a part of the agreement that is still executory on both sides. . . . The rule stated . . . makes it clear that it

can do so by supplying a term which is reasonable in the circumstances . . . ." Comment *c* to Section 158 contains similar language. This is a sensitive undertaking. Normally, a court "will not reform a written contract so as to make a contract for the parties that they did not make between themselves." ***New Charter Coal Co. v. McKee***, 191 A.2d 830, 833 (Pa. 1963). That is why a traditional reformation remedy in Pennsylvania is employed only to "make [the written contract document] correspond to the understanding of the parties." ***Bugen***, 184 A.2d at 500; ***see also Allen-Myland***, 140 A.3d at 693 (requiring that the parties "be placed in their former position regarding the subject matter of the contract"). Accordingly, any effort to craft a remedy here must be guided by the need to adhere to the parties' original agreement to the maximum extent possible, and not to substitute terms to which the parties never consented.

The unenforceable contract term at issue here provided:

> Employee shall be eligible to continue to participate, at the Employer's expense, in the present group life insurance plan ($375,000) offered by the Employer as may be carried from time to time for all eligible employees, on the same terms and conditions that the Employee currently participates.

Agreement at ¶ 2(a). The trial court reformed this provision to state:

> Employee shall be eligible to continue to participate, at the Employer's expense, in the present group life insurance plan ($20,000) offered by the Employer, as may be carried from time to time for all eligible employees.

Trial Ct. Order, 6/29/16, at 1. Murray contends that the trial court erred because reformation of the unenforceable provision should have assured

- 16 -

that he (or his estate) will receive the $375,000 benefit that he expected, and he argues that because group insurance coverage in that amount is not available, the trial court should have reformed the contract to provide for an equal benefit under an individual insurance policy. But such relief would not have been reasonable on these facts.

First, as the trial court held, the provision to which the parties agreed did not bestow a contractual right to a $375,000 benefit or a right to have the Township purchase individual insurance for Murray. The trial court explained:

> The parties agreed to allow Murray to remain eligible to participate in the present group life insurance plan at the Township's cost. The Township made no guarantees in this section. It simply obligated itself to allow Murray to participate in group life insurance, an obligation it satisfied. What Murray remains eligible for under the group policy are benefits as [a] "Class 4 Member," not as a "Class 1 Member."
>
> Moreover, the language of the Agreement makes no mention or promise of an individual life insurance policy for Murray. No one has suggested the language is anything but clear as to what benefits were contracted for by the parties. The court therefore cannot and should not delve further than the contractual language to determine the parties' "intentions," as suggested by Murray.

Trial Ct. Order, 6/29/16, at 4.

The trial court correctly interpreted the parties' agreement. The contract provided that Murray "shall be eligible to continue to participate, at the Employer's expense, in the present group life insurance plan . . . offered by the Employer," and the court's reformation order therefore properly

preserved that same right to eligibility. The court changed only the contract's unenforceable parenthetical reference to the $375,000 benefit that the parties incorrectly believed would apply to Murray and corrected that number to specify the amount, $20,000, that actually is available to an eligible person in Murray's position.[15] The trial court thus reformed the contract to adhere to the eligibility provision to which the parties agreed, changing only that element of the agreement that was impracticable of performance. The court's effort to adhere closely to the original contract was both reasonable and entirely appropriate.

Second, any reformation of the contract had to conform to the law under which the Township must operate. Here, the governing law is the Second Class Township Code, Willistown Township's enabling statute. "[M]unicipalities are created by the state and as such, may do only those things which the state legislature has placed within their power in enabling statutes." **White Deer Twp. v. Napp**, 985 A.2d 745, 758 (Pa. 2009). Section 1512(d) of the Second Class Township Code authorizes the Township to purchase insurance "under a policy or policies of **group** insurance covering life, health, hospitalization, medical service or accident insurance," 53 P.S. § 66512(d) (emphasis added), and the parties agree that under this provision the Township does **not** have authority to purchase individual life

---

[15] Of course, coverage of $20,000 was subsumed within the $375,000 coverage that the parties initially intended.

- 18 -

insurance policies for its present or former employees. *Cf., e.g.*, *Bolduc v. Bd. of Supervisors of Lower Paxton Twp.*, 618 A.2d 1188, 1191 (Pa. Cmwlth. 1992) (holding that because Second Class Township Code did not expressly give township the power to enter into an employment contract for a fixed term, such a contract was void and unenforceable, and an employee terminated before the end of his term could not recover damages for its breach), *appeal denied*, 625 A.2d 1195 (Pa. 1993).  The trial court's authority to provide Murray with equitable relief therefore did not extend to ordering payment by the Township for an individual life insurance policy, as the Township would be legally incapable of complying with such a term.

The contract terms sought by Murray thus would require the trial court to depart from both the original agreement of the parties and the legal restrictions under which one party, the Township, was required to operate. Murray has cited no authority that would allow the trial court to award such relief, and we are confident that he was not entitled to have the trial court "reform" the contract to add the terms that he seeks.  Murray's suggestion that the contract substitute a right to a direct payment of $375,000 by the Township to his estate upon his death bears no resemblance to the original contract, which did not call for such a payment by the Township.  His suggestion of a new contract term based on the amount of annual insurance premiums needed to pay for an individual $375,000 policy would similarly impose a new financial undertaking on the Township that finds no basis in

the parties' agreement; the Township agreed to include Murray under its present group policy and did not agree to incur an additional expense to provide Murray with a special insurance benefit. This is not a case where the trial court was called upon to fashion compensatory relief for breach of the contract's insurance provision; it is a case where the court was asked to salvage what it could of an unenforceable provision of the contract that Murray did not want declared void. The trial court properly performed that task, and we discern no abuse of its discretion in doing so. *See Vautar*, 133 A.3d at 12.

We are sympathetic to Murray's argument that the unenforceability of the current life insurance provision in his contract with the Township deprives him of a significant financial benefit on which he relied, but that argument does not provide a legal basis for relief. As the Supreme Court stated in **New Charter Coal**, 191 A.2d at 833, "the law of contract does not and cannot take heed of emotions; otherwise, the emotions of the judge would ever be the deciding factor and chaos the result." Murray is deprived of his expected benefit because both he and the Township failed to conduct the due diligence necessary to determine what group insurance benefits actually were available in advance of entering their agreement. Nothing in our decision precludes the parties from now negotiating a new or supplemental agreement that provides Murray with additional relief if they

are inclined to do so.  But Murray may not obtain such relief from the trial court or this Court under the guise of "reformation" of the Agreement.

Having discerned no error of law or abuse of discretion, we affirm the trial court's decision.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/17/2017