J-S35001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

DEBORAH GALLAGHER N/K/A : IN THE SUPERIOR COURT OF
DEBORAH A. GATTONE : PENNSYLVANIA
:
:
:
v. :
:
:
:
DOUGLAS GALLAGHER :
: No. 3087 EDA 2018
Appellant :

Appeal from the Order Entered September 26, 2018
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 2015-25149

BEFORE: OLSON, J., STABILE, J., and STRASSBURGER*, J.

MEMORANDUM BY OLSON, J.: Filed: June 18, 2020

Appellant, Douglas Gallagher (Husband), appeals from the order

entered on September 26, 2018, enforcing a property settlement agreement

between Husband and Deborah Gallagher, n/k/a Deborah A. Gattone (Wife).

We affirm.

We briefly summarize the facts and procedural history of this case as

follows. Husband and Wife married in 1990. Wife filed for divorce in

September 2015. The parties entered into a property settlement agreement

on August 4, 2016. Relevant to the current appeal, paragraph five of the

property settlement agreement provides as follows:

> Husband agrees that Wife shall receive fifty percent (50%) of the
> value of [Husband's] Johnson and Johnson [s]tock. Such amount
> is equal to $75,886.00. Husband shall effectuate the transfer
> within forty-five days from the execution of this agreement.

_____
* Retired Senior Judge assigned to the Superior Court.

Property Settlement Agreement, 8/4/2016, at 9-10, ¶ 5. The total value of Husband's stock was based upon a Johnson and Johnson account statement from December 2015, which at the time the parties entered into the settlement agreement, was accessible to both parties. On January 11, 2017, the trial court issued a divorce decree incorporating the August 4, 2016 property settlement agreement. On July 24, 2017, Wife filed a motion to enforce the August 4, 2016 property settlement agreement averring, *inter alia*, that she had yet to receive her share of Husband's Johnson and Johnson stock.

The trial court held a hearing on Wife's motion to enforce on August 8, 2018. Therein, counsel for Wife stated that in October 2017, one year after the parties entered the property settlement agreement, Husband claimed for the first time that his Johnson and Johnson stock was actually worth approximately $27,000.00. N.T., 8/8/2018, at 8. As a result, the parties agreed in October 2017 that Husband would provide Wife authorization to obtain Husband's stock information directly from Johnson and Johnson. *Id.* at 8-9. In May 2018, the parties discovered that the actual total of Husband's Johnson and Johnson stock was $27,701.95. *Id.* at 12. Wife argued that she materially relied upon the agreed valuation of Husband's stock in executing the property settlement agreement. Accordingly, she requested that the trial court enforce the plain language of the agreement by awarding her $75,886.00. *Id.* at 12-13. Husband argued that the parties were mutually mistaken and, therefore, Wife was only entitled to half of the actual value of

his Johnson and Johnson stock, or approximately $13,000.00. *Id.* at 47-52.

On September 26, 2018, the trial court agreed with Wife and ordered Husband

to transfer $75,866.00 to Wife within 30 days. Husband's timely appeal

resulted.[1]

On appeal, Husband presents the following issue for our review:

Did the trial court err, as a matter of law, or otherwise abuse its discretion, when it granted [Wife's] motion to enforce settlement agreement; ordering [Husband] to compensate [Wife] in the amount of $75,886.00, for the value of corporate stock that both [Wife] and [Husband] mistakenly believed [Husband] to possess at the time that the marital settlement agreement was executed?

Appellant's Brief at 4.

Our standard of review is as follows:

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An abuse of discretion or failure to exercise sound discretion is not merely an error of judgment. But if, in

_____

[1] Husband filed a notice of appeal on October 19, 2018. On October 25, 2018, the trial court ordered Husband to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Husband complied timely on November 8, 2018. The trial court subsequently issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 3, 2019.

reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*        *        *

Marital settlement agreements are private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration. A marital [] agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity.

A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification.

Established Pennsylvania law states:

> When interpreting the language of a contract, the intention of the parties is a paramount consideration. In determining the intent of the parties to a written agreement, the court looks to what they have clearly expressed, for the law does not assume that the language was chosen carelessly. When interpreting agreements containing clear and unambiguous terms, we need only examine the writing itself to give effect to the parties' intent.

In other words, the intent of the parties is generally the writing itself.

***Stamerro v. Stamerro***, 889 A.2d 1251, 1257–1258 (Pa. Super. 2005)

(internal citations, quotations, original brackets, and footnote omitted).

Moreover, this Court previously determined:

Pennsylvania courts regularly employ the Restatement (Second) of Contracts when resolving contract disputes. The doctrine of mutual mistake of fact serves as a defense to the formation of a contract and occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party. A mutual mistake occurs when the written instrument fails to set forth the true agreement of the parties. The language of the instrument should be interpreted in light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

The Restatement (Second) of Contracts § 152 provides:

§ 152. When Mistake Of Both Parties Makes A Contract Voidable

(1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party **unless he bears the risk of the mistake under the rule stated in § 154**.

(2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

Restatement (Second) of Contracts § 152 (1981).

*Hart v. Arnold*, 884 A.2d 316, 333–334 (Pa. Super. 2005) (internal quotations, footnote, brackets, original emphasis, and case citations omitted) (emphasis added).

In this case, the trial court determined:

The parties mutually [determined] the total value of Husband's Johnson and Johnson stock [prior to executing their property settlement agreement] based upon an account statement provided by Husband and titled, "Summary of J&J Stock as of December 31, 2015." A copy of [this document] was admitted into evidence as exhibit "W-4" at the parties' August 8, 2018 hearing before the [trial] court. Exhibit "W-4" lists the closing

- 5 -

balance of the "J&J Stock Fund" as of December 31, 2015 as $151,771.24. In addition, the statement lists the closing balance of the "J&J Stock Contribution" as of December 31, 2015 as $27,967.20.

Husband and Wife testified [at the August 8, 2018 hearing] that they each believed that the marital value of the Johnson and Johnson stock was $151,722.00 and that Wife's 50% share was $75,886.00. In accordance with section 201(1) and [s]ection 203(b) and (c) of the Second Restatement of Contracts, by placing the exact value of Wife's share of Johnson and Johnson stock in their August 4, 2016 [p]roperty [s]ettlement [a]greement, the amount of Johnson and Johnson stock Wife was to receive was an unambiguous term of the contract created by the parties' August 4, 2016 [p]roperty [s]ettlement [a]greement.

Trial Court Opinion, 1/3/2019, at 4.

Upon review of the record, we agree that the parties were mutually mistaken as to the actual value of Husband's Johnson and Johnson stock. Both parties readily concede that they mistook the value of the stock when they entered into the marital settlement agreement. *See* Wife's Petition for Special Relief, 6/4/2018, at ¶ 19 (Wife avers that she learned the actual value of Husband's Johnson and Johnson stock during a conference call with parties' counsel in May of 2018); *see also* Husband's Brief at 14-15 ("it is clear from the evidence […] that the [p]arties and their respective counsel were all mistaken in their belief that [Husband's] Johnson and Johnson stock had a value of $151,771.24 at the time that they entered into the [m]arital [s]ettlement [a]greement[.]"). The contractual mistake was the result of an erroneous basic assumption and had a material effect on the agreed exchange of the performance by both parties. Thus, as there is no dispute that both Husband and Wife incorrectly interpreted Husband's 2015 account statement

from Johnson and Johnson, the trial court next examined who bore the risk of that mutual mistake.

This Court has stated:

[A] contract [based upon mutual mistake] is voidable by the adversely affected party if three conditions are met. First, the mistake must relate to a "basic assumption on which the contract was made." Second, the party seeking avoidance must show that the mistake has a material effect on the agreed exchange of performances. Third, **the mistake must not be one as to which the party seeking relief bears the risk**. The parol evidence rule does not preclude the use of prior or contemporaneous agreements or negotiations to establish that the parties were mistaken. However, since mistakes are the exception rather than the rule, the trier of the facts should examine the evidence with particular care when a party attempts to avoid liability by proving mistake.

*          *          *

A contract entered into under a mutual misconception as to an essential element of fact may be rescinded or reformed upon the discovery of the mistake if (1) the misconception entered into the contemplation of both parties as a condition of assent, and (2) the parties can be placed in their former position regarding the subject matter of the contract. In other words, mutual mistake occurs when a fact in existence at the time of the formation of the contract, but unknown to both parties, will materially affect the parties' performance of the contract.

Section 154 of the Restatement (Second) of Contracts provides:

§ 154. When A Party Bears The Risk Of A Mistake

**A party bears the risk of a mistake when**

(a) the risk is allocated to him by agreement of the parties, or

(b) **he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient**, or

- 7 -

(c) the risk is allocated to him by the court on the ground
that it is reasonable in the circumstances to do so.

Restatement (Second) of Contracts § 154 (1981). The rule stated
in this Section determines whether a party bears the risk of a
mistake for purposes of Sections 152 and 153. **Id.** at Comment:
*a. Rationale*. Even though a mistaken party does not bear the risk
of a mistake, he may be barred from avoidance if the mistake was
the result of his failure to act in good faith and in accordance with
reasonable standards of fair dealing.

A contract made under a mutual mistake as to an essential fact
which formed the inducement to it, may be rescinded on discovery
of the mistake, if the parties can be placed in their former position
with reference to the subject-matter of it.

**Hart**, 884 A.2d at 333–334 (case citations and original emphasis omitted;

emphasis supplied).

Here, the trial court determined:

[A] comparison of the facts of this case to the elements of the
[d]octrine of [m]utual [m]istake reveals that when applied to the
facts of the instant case, [Husband bore the risk of the mistake
pursuant to Restatement (Second) of Contracts §§ 152 and 154].
The parties relied on the benefit documentation from Husband in
order to determine the value of the Johnson and Johnson stock,
and the mistake has a material effect on the agreed exchange of
performances. However, Husband, as the adversely affected
party, bears the risk of the mistake because he [promised to
convey] Johnson and Johnson stock to Wife in the amount of
$75,866.00. Husband should not be permitted to hide behind the
[d]octrine of [m]utual [m]istake to avoid his obligations under the
parties' August 4, 2016 [p]roperty [s]ettlement [a]greement.

Finally, [] Husband has worked at Johnson and Johnson for over
twenty (20) years. The argument and notion that Husband is not
precisely aware of the precise total value of his Johnson and
Johnson stock, including the number of shares owned by Husband
and the proper way to read his account statement is not credible
and preposterous. If Husband was unsure of any of the above, it
was negligent of Husband not to inquire further with Johnson and
Johnson company officials as to the precise value of his stock prior

- 8 -

to stating the amount in his signed August 4, 2016 [p]roperty [s]ettlement [a]greement. In issuing its order of September 26, 2018, the [trial] court was attempting to make Wife whole due to Husband's alleged ignorance of the value and ownership of his Johnson and Johnson stock.

Trial Court Opinion, 1/3/2019, at 5.

Based upon our standard of review, and the applicable principles of contract law, we agree with the trial court's conclusion that Husband bore the risk of the parties' mutual mistake.[2] Here, Wife sought to compel Husband to transfer her agreed upon share of his Johnson and Johnson stock valued at $75,886.00, as specifically set forth in the parties' settlement agreement. In response, Husband requested that the trial court reform the parties' property settlement agreement to reflect the later discovered value of his actual stock, or approximately $27,000.00. Therefore, Husband is the adversely affected party and, under settled Pennsylvania law, he may void the express terms of the parties' agreement only if three conditions are met: (1) the mistake is a basic assumption on which the contract was made; (2) the mistake had a material effect on the agreed exchange of performances; and, (3) the mistake must not be one as to which the party seeking relief bears the risk. There is

_____

[2] We note that, in his appellate brief, Husband does not address the trial court's analysis and assessment that he bore the risk of the mistake. In fact, he does not set forth any law pertaining to the issue or explain how the trial court erred in its application of the governing principles of contract interpretation to the facts established by the record. In the absence of cogent argument explaining how the trial court committed legal error or relied upon facts that were not demonstrated by the evidence, we fail to perceive how Husband has come forward with a viable claim that the trial court abused its discretion. Moreover, we note that the learned dissent fails to address this portion of the discussion.

no dispute that the parties' mistake was a basic assumption that had a material effect on mutual performance. Thus, the only issue is whether the mistake was, or was not, one as to which Husband, as the party seeking relief, bore the risk. To determine whether Husband bore the risk, we look to § 154 of the Restatement (Second) of Contracts. Here, there was no allocation of risk by the parties or the trial court, so our analysis focusses on whether Husband was aware, at the time he entered the contract, that he had limited knowledge as to the value of his stock which he was willing to treat as sufficient.

In this case, the record supports the trial court's conclusion that, at the time the parties entered into the property settlement agreement, Husband knew he had limited knowledge with respect to the facts regarding his Johnson and Johnson stock, but treated his limited knowledge as sufficient.[3] At the

_____

[3] Husband's testimony establishes that he did nothing to acquire knowledge about his Johnson and Johnson stock despite available informational resources. There is no dispute that Husband received quarterly benefits statements from Johnson and Johnson. N.T., 8/8/2018, at 22. Wife testified that she would leave the statements on a counter for Husband to review. *Id.* Husband also had on-line access to his statements and knew how to review his statements electronically. *Id.* Husband testified that he assumed he was receiving benefits statements for 27 years, but at the time he entered the settlement agreement he "had no idea what the values were" for his stock. *Id.* at 28; *see also id.* at 37. When asked whether he thought his 2015 Johnson and Johnson account statement, upon which the parties relied, appeared to be "too high" or was "out of the ordinary," Husband responded, "I wouldn't know either way." *Id.* at 37. Husband further admitted that he "didn't research the numbers." *Id.* at 45. Moreover, Husband did not provide additional evidence or explain how the account value of $151,771.24 was derived or what it comprised. Husband testified that his December 2015

- 10 -

time he entered the parties' agreement, Husband had been employed at Johnson and Johnson for 27 years. The trial court thus reasonably inferred that Husband was aware of Johnson and Johnson resources and personnel who could confirm the precise value of his stock prior to entering into the settlement agreement. Husband, however, did not avail himself of these resources and, instead, elected to enter the settlement agreement despite known deficiencies in his knowledge. More specifically, the trial court concluded it was "preposterous" and "not credible" that Husband was not precisely aware of the actual value of his stock account at the time he entered into the settlement agreement.[4] The trial court had the opportunity to view

_____

benefits statement was "confusing" and suggested "accounts were intermingled." *Id.* at 43. When the trial court asked for clarification, Husband stated:

> That hundred and fifty-[one] came from the -- it was two accounts added together, and then it was separated out again and re-put on. So that stock was separate, but yet it was still added into the other number.

*Id.* Based upon the record before us, there is still no clear indication what the sum of $151,771.24 represents.

[4] Contrary to the contentions made by the learned dissent, the trial court did not infer that Husband was "an expert on the value of Johnson and Johnson stock" or "someone with special knowledge of the stock's valuation." Dissenting Memorandum at 4. The trial court, instead, stated that if Husband were unsure of the value of his account, he could further inquire with Johnson and Johnson company officials to determine the precise value of his stock. Trial Court Opinion, 1/3/2019, at 5. The trial court's decision did not hold Husband to an expert standard. Rather, it determined that Husband had

Husband and Wife testify and we cannot second-guess its credibility determinations.[5]  Thus, we agree with the trial court that Husband knew he

---

limited knowledge of the value of his own assets, but could have obtained a precise value from his employer.

[5] The dissent misapprehends the doctrine of mutual mistake.  The dissent opines "[t]here is no indication that Wife asked for any additional information to supplement what was provided to her by Husband [and] it appears she was satisfied with utilizing the [2015] account statement as the sole means to determining the value of the stock."  Dissenting Memorandum at 4.  Whatever Wife did, or did not do, is not legally relevant since she is not seeking reformation of the parties' written agreement.  The dissent would fault Wife for not double-checking the balance of Husband's stock account prior to entering the settlement agreement.  *See id.* at 5 ("both parties simply interpreted the account statement incorrectly").  As such, the dissent would allow contract reformation merely based upon an undisputed mutual mistake.  *See id.* ("the doctrine of mutual mistake applies and the trial court erred in enforcing the settlement agreement.").  We respectfully disagree.  Wife is not seeking reformation of the contract and, therefore, she cannot bear the risk of the parties' mutual mistake.  The dissent does not address the issue of who bore the risk of the mutual mistake.  Instead, the dissent would allow equitable contract reformation anytime there is a mutual mistake. Contract reformation based upon mutual mistake is not as simple as the dissent suggests.  *See* Dissenting Memorandum at 5.  ("[O]ur law provides for contract reformation to rectify any purported prejudice suffered." *citing* *Zurich Am. Ins. Co. v. O'Hanlon*, 968 A.2d 765, 770 (Pa. Super. 2009) ("Mutual mistake will afford a basis for reforming a contract.")).  This Court has stated:

> Normally, a court will not reform a written contract so as to make a contract for the parties that they did not make between themselves.  That is why a traditional reformation remedy in Pennsylvania is employed only to make the written contract document correspond to the understanding of the parties. Accordingly, any effort to craft a remedy [] must be guided by the need to adhere to the parties' original agreement to the maximum extent possible, and not to substitute terms to which the parties never consented.

lacked understanding regarding the actual value of his stock at the time of the

contract, but proceeded with execution nevertheless. By relying upon the sum

certain amount of $75,886.00 in the settlement agreement, Husband was

_____

***Murray v. Willistown Twp.***, 169 A.3d 84, 94 (Pa. Super. 2017) (internal citations, brackets, and quotations omitted). The ***Murray*** Court further explained:

> Mutual mistake regarding an essential term of a contract may provide a basis for the contract's rescission if (1) the mistake relates to an essential fact which formed the inducement to the contract, and (2) the parties can be placed in their former position with reference to the subject-matter of the contract. Alternatively, if the same conditions are met, courts can reform a contract entered under mutual mistake.
>
> We most commonly have allowed reformation of mistaken contract provisions in cases of scriveners' errors, where the parties' writing mistakenly failed to record their agreed-upon intentions.

***Id.*** at 90–91. Here, there was no scrivener's error. The marital settlement agreement memorialized the parties' intent at the time they entered into the contract. We recognize that a "remedy akin to reformation may be available in some situations other than drafting errors" when "justice requires." ***Id.*** at 91 (citation omitted). However, we have determined generally that justice requires reformation only when a contract provision cannot be performed due to impracticability, frustration, or deals with specific performance. ***Id.*** Here, there are no special circumstances which would allow for contract reformation. Regardless, as discussed at length above and never addressed by the dissent, Husband (as the party seeking relief) bore the risk of mutual mistake because the trial court found that, at the time the marital settlement agreement was executed, he was aware that he possessed only limited knowledge with respect to the facts to which the mistake related but treated his limited knowledge as sufficient. As the record supports these findings, we cannot agree that contract reformation constitutes an available or appropriate remedy. Based upon our deferential standard of review and the established law pertaining to mutual mistake, the trial court's decision was proper.

satisfied with utilizing the 2015 statement of his Johnson and Johnson account even though he knew he did not consult company resources that could verify an accurate account value.[6] Husband could have contracted to limit Wife's receipt to 50% of his Johnson and Johnson stock without reference to an actual dollar amount. Instead, he relied solely upon the information set forth in his 2015 account statement, which he concedes he did not understand. The record supports the trial court's findings and we will not usurp the trial court's credibility determinations.

---

[6] Upon review of the certified record, both parties agreed that the only information relied upon prior to entering the settlement agreement was Husband's 2015 Johnson and Johnson account statement. The parties entered into the settlement agreement on August 4, 2016. Husband admitted that once the parties separated, Wife did not have access to Husband's financial statements anymore. N.T., 8/8/2018, at 34 and 42. Johnson and Johnson would not speak with Wife or Wife's counsel without Husband. *Id.* at 39. It was not until May 17, 2018, almost 21 months after the August 4, 2016 settlement agreement that counsel for Wife learned the actual account value. **See** Husband's Brief at 6 ("On or about May 17, 2018, [Wife's] counsel confirmed that the [p]arties had been mistaken[.]"); **see also** Wife's Petition for Special Relief, 6/4/2018, at ¶ 19 ("During the call with Johnson and Johnson, Wife's counsel learned that the current value of Husband's Johnson & Johnson [stock] was approximately $27,000.00."). There was ample evidence that Husband had access to benefits consultation at Johnson and Johnson that Wife did not. In fact, Husband had to provide wife with authorization in October 2017 to obtain Husband's stock information directly from Johnson and Johnson. N.T., 8/8/2018, at 8-9. Thus, we reject the dissent's suggestion that there was "no indication that Husband had special and exclusive access to inside company information[.]" Dissenting Memorandum at 5. The trial court found that the information which led to the discovery of the mistake was available to Husband anytime through Johnson and Johnson, his employer for 27 years. Husband could have obtained the information before entering the settlement agreement but he instead entered the agreement with a willingness to treat his deficient knowledge as sufficient. Because he did so, Pennsylvania contract law precludes us from granting him relief for his ill-informed choice.

In sum, there is no dispute that the parties were mutually mistaken, but as the party seeking contract reformation, Husband bore the risk of the mistake because he treated his limited understanding of his Johnson and Johnson stock as sufficient when he executed the parties' marital settlement agreement. Accordingly, we discern no abuse of discretion or error of law in enforcing the property settlement agreement and ordering Husband to transfer $75,886.00 to Wife.

Order affirmed.

Judge Stabile joins.

Judge Strassburger files a Dissenting Memorandum.