J-S03002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TIMOTHY J. MAILLIARD AND<br>SABRINA L. MAILLIARD | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDGEWOOD DEVELOPMENT, LLC | : | |
| | : | No. 833 WDA 2021 |
| Appellant | : | |

Appeal from the Order Entered June 17, 2021
In the Court of Common Pleas of Crawford County Civil Division at No(s):
No. AD 2016-722

BEFORE:  LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

DISSENTING MEMORANDUM BY PELLEGRINI, J.:     **FILED: MAY 26, 2022**

I respectfully dissent from the majority's holding because I would find that the record supports the trial court's conclusion that a mutual mistake justified the reformation of the quit claim deed that Edgewood Development, LLC purchased from the Mailliards.

**I.**

**A.**

The following facts are undisputed.  The Mailliards initially entered into a non-written land installment contract with a third party for $35,000 as to a 16-acre piece of property identified herein as "Parcel 1."  When the third party

_____

[*] Retired Senior Judge assigned to the Superior Court.

defaulted, a writ of execution was entered, authorizing a sheriff's sale of an interest in a land contract as to Parcel 1. However, at the sheriff's sale on June 20, 2016, an erroneous metes and bound description in the sheriff's deed included both Parcel 1 and an additional 54-acre parcel of land identified herein as "Parcel 2."

Edgewood successfully bid $42,000 at the sheriff's sale, ostensibly believing that this was the accepted price for both properties.[1] However, as a matter of law, a valid conveyance of Parcel 2 could not have taken place at the sheriff's sale because the property was not subject to the writ of execution. *See CSS Corp. v. Sheriff of Chester Cty.*, 507 A.2d 870, 872 (Pa. Super.

_____

[1] The sheriff's mandate only to sell Parcel 1 remained intact despite the incorrect property description in the sheriff's deed. The Mailliards had initially acquired Parcel 1 and Parcel 2 simultaneously through a quit claim deed following the death of a relative. Subsequently, the Mailliards formed a non-written contract with a third party, Carl Sterling, agreeing to sell him Parcel 1. After Sterling's default, the Mailliards foreclosed, but erroneously described the subject property in terms that included both Parcel 1 and Parcel 2. Sterling passed away, and a writ of execution was entered as to his interest in Parcel 1. A sheriff's deed was entered erroneously describing Parcel 1 and Parcel 2, but still clarifying that the sheriff's sale was "under and by virtue of a writ of Execution . . . at the suit of [the Mailliards] against: [Sterling]." *See* Answer and New Matter to First Amended Complaint, 3/24/2017, Exhibit 2. Since Sterling had no interest in Parcel 2, and the foreclosure action did not concern Parcel 2, that property could not be subject to the sheriff's sale.

1986) ("If the debtor had no rights in the property at the time of the sheriff's sale . . . no title passes to the purchaser.").[2]

Edgewood asked the Mailliards to provide it with a quit claim deed as to the property it had acquired at the sheriff's sale. Under the impression that only Parcel 1 had been conveyed, the Mailliards acquiesced to Edgewood's request for a quit claim deed which, in turn, reiterated the erroneous property description contained in the sheriff's deed. In exchange for this quit claim deed, the Mailliards were paid $1.00.

**B.**

The Mailliards first realized the problem with the sheriff's sale and the quit claim deed once they noticed on September 5, 2016, that no tax bill had been issued as to Parcel 2. They then contacted Edgewood about the incorrect inclusion of Parcel 2 in the sheriff's sale, and Edgewood responded by offering to sell back Parcels 1 and 2 (all 70 acres) for $210,000.00.

The Mailliards declined the offer and instead filed suit against Edgewood, asserting four separate claims for relief based on unjust enrichment, recission, fraud and reformation. The Mailliards stated in their unjust enrichment count that Edgewood should not be permitted to acquire Parcel 2 for $1.00 via quit claim deed because it would be an inequitable result. They also claimed in

---

[2] Edgewood has rightfully conceded that "the general law does support the trial court's position that the Sheriff's deed conveyed only Parcel [1] as a matter of law." Appellant's Brief, at 9.

relevant part that the sheriff's deed and quit claim deed purporting to convey Parcel 2 should be reformed to exclude the description of that property and thereby conform to the writ of execution predicated on the underlying foreclosure matter regarding only Parcel 1.

The Mailliards moved for summary judgment and the trial court ruled in their favor as to the unjust enrichment and reformation counts. The trial court ordered that the subject deeds would be corrected by amending their property descriptions so as to encompass only Parcel 1. Edgewood appealed, contending that the sheriff's deed and the quit claim deed should remain intact because Edgewood had reasonably acted in reliance on the Mailliards' actions and misunderstandings about the property subject to the sheriff's sale.

The majority now vacates the trial court's grant of summary judgment as to the Mailliards' reformation count after analyzing the claim in the context of a *unilateral mistake*, explaining that "it is undisputed that the mistake – incorrectly listing Parcel 2 in the sheriff's and quit claim deeds – was one-sided and, admittedly, made by the Mailliards." In doing so, however, I believe the majority focuses too narrowly on the underlying cause of the parties' respective mistakes rather than what the parties understood and intended when the quit claim deed was executed, resulting in a *mutual mistake*.

## II.

"A mutual mistake occurs when the written instrument fails to set forth the true agreement of the parties." ***Voracek v. Crown Castle USA, Inc.***,

907 A.2d 1105, 1107-08 (Pa. Super. 2006). A mutual mistake of fact "serves as a defense to the formation of a contract and occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party." **Murray v. Willistown Township**, 169 A.3d 84, 90 (Pa. Super. 2017) (quoting **Voracek**, 907 A.2d at 1107-08).

A contract may be reformed or rescinded based on a mutual mistake if "(1) the mistake relates to an essential fact which formed the inducement to [the contract], and (2) the parties [can be] placed in their former position with reference to the subject-matter of [the contract]." **Id.** (quoting **Voracek**, 907 A.2d at 1107-08).

In addition, "the mistake must not be one as to which the party seeking relief bears the risk." **Step Plan Servs., Inc. v. Koresko**, 12 A.3d 401, 410 (Pa. Super. 2010) (emphasis & citation omitted).[3] A party seeking reformation or recission based on a mutual mistake must present clear and

---

[3] A party may bear the risk of a mistake when the risk is allocated by agreement of the parties, the party is aware of having limited knowledge of fact to which the mistake relates, or the risk is allocated to the party by the court where it is reasonable under the circumstances to do so. **See Hart v. Arnold**, 884 A.2d at 316 (Pa. Super. 2005) (citing Restatement (Second) of Contracts § 154 (1981)). A party may be barred from avoiding a contract "if the mistake was the result of his failure to act in good faith and in accordance with fair dealing." **Id.**

convincing evidence of the mistake. **See Smith v. Thomas Jefferson Univ. Hosp.**, 621 A.2d 1030, 1032 (Pa. Super. 1993).

Here, the inclusion of Parcel 2 in the sheriff's sale was a legal nullity because the sheriff lacked authority to sell that property. The transaction we must evaluate for a mutual mistake is Edgewood's purchase of a quit claim deed for $1.00, as this is the transaction that effectively conveyed Parcel 2 to Edgewood.

At the time the quit claim deed was entered, the Mailliards and Edgewood *both* wrongly assumed that the sheriff's sale was completed based on a true and accurate property description relating to the underlying foreclosure action. The Mailliards incorrectly thought that the sheriff's deed only described Parcel 1. Edgewood incorrectly thought that the underlying foreclosure action concerned Parcel 1 *and* Parcel 2. The trial court, therefore, correctly found, based on the uncontradicted evidence, that the execution of the quit claim deed was based on the parties' mutual mistake, stating:

> The Mailliards' and Edgewood['s] intention, as unambiguously stated in the Quit Claim Deed, was to supplement [the Sheriff's Deed] to convey any remaining interest in the property as the sheriff's sale was on an interest in a land contract." In setting forth the description of both Parcels 1 and 2, the Quit Claim Deed thus did not conform to the parties' stated intentions.

Trial Court Opinion, 6/17/2021, at 5 (footnote omitted).[4]

---

[4] The trial court cited **Murray v. Willistown Township**, 169 A.3d 84, 90 (Pa. Super. 2017), for the proposition that "[r]eformation is an available remedy
*(Footnote Continued Next Page)*

- 6 -

Accordingly, the record establishes that Edgewood paid the Mailliards $1.00 to ratify a sheriff's sale that had, unbeknownst to either side, exceeded the mandate of the writ of execution. If both parties had known at the outset that the invalid conveyance of Parcel 2 had taken place at the sheriff's sale, then neither side would have transacted for the quit claim deed. Obviously, the Mailliards would not have intentionally given away Parcel 2 for nominal consideration, and had it known of the defects in the sheriff's sale, Edgewood no doubt would have declined to engage in bad-faith or fraud by then inducing the Mailliards to sell Parcel 2 for $1.00.

Necessarily, a mutual mistake was established because a fundamental misunderstanding as to a basic assumption of the contract at the time of formation would have had a material effect on the agreed exchange as to either party. Reformation was proper because (1) the mutual mistake related to an essential fact which formed the inducement to the quit claim deed, and (2) a reformation of the property descriptions in the subject deeds can place the parties in their former position with reference to the subject-matter of the

_____

when the deed fails to conform to the parties' intentions." The **Murray** decision involved an application of the principles of mutual mistake. **See generally Murray**, 169 A.3d at 90. No finding was made by the trial court as to alleged fraud on the part of Edgewood because it is an element of unilateral, but not mutual, mistake. **See id.**

contract – the foreclosed land that was properly subject to the sheriff's sale.[5]

Accordingly, because I would find that the trial court's order is supported by undisputed evidence establishing a mutual mistake warranting reformation, I must respectfully dissent.

---

[5] As Edgewood only paid nominal consideration ($1.00) for Parcel 2, and it had not actually purchased Parcel 2 in the sheriff's sale, reforming the deeds in this manner would place Edgewood in its former position prior to the transaction for the quit-claim deed.