J-S07032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DORIS J. O'HANDLY | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EDWARD J. RUCH | : | |
| | : | |
| Appellant | : | No. 1094 MDA 2024 |

Appeal from the Order Entered July 3, 2024
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2022-CV-07356-DV

BEFORE:  NICHOLS, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: JULY 22, 2025**

Appellant, Edward J. Ruch ("Husband"), appeals from the order entered in the Dauphin County Court of Common Pleas, which granted the petition filed by Appellee, Doris J. O'Handly ("Wife"), to enforce the marital settlement agreement ("MSA") entered into by the parties.  We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> The parties … were married in 1979 and separated in December 2018.  Wife initiated this divorce action in September 2022, which included a count seeking equitable distribution.  In November 2022, Cindy Conley was appointed as the Divorce Hearing Officer (DHO) to address the equitable distribution claims.  She held a number of settlement conferences culminating with one on February 29, 2024, at which the parties entered into the MSA.[1]
>
> [1] A Divorce Decree was entered on March 15, 2024.
> [The MSA did not merge with the divorce decree.]

Under MSA Paragraph 10(a) (Retirement Accounts and Plans), the parties agreed that Husband would transfer $361,126 to Wife from his Ameritas IRA, via a qualified domestic relations order (QDRO). Under MSA Paragraph 6 (Division of Personal Property), Wife agreed to give Husband all personalty remaining in the former marital residence except for 56 items listed on MSA Exhibit A, which were reserved for her. The MSA specified the manner in which Wife could go to the former marital residence to obtain those items including that the retrieval be done in front of a constable and that Husband would not be present.

After the MSA was entered, Wife sought that Husband pay her a QDRO of $368,126, which was the amount she claimed the parties had negotiated and intended to be the amount transferred to her from Husband, and not the $361,126 as stated in the MSA, which she claimed was a scrivener's error. Husband would not agree to pay the higher figure. The parties' counsel reached out to DHO Conley to help resolve the issue, and following a telephone conference, Conley issued the following memorandum:

> At the request of the attorneys, on March 29, 2024, the Divorce Hearing Officer (DHO), spoke with the attorney for Wife and the attorney for Husband via a [t]elephone [c]onference…. During the [telephone conference], the attorneys explained that when the parties entered into their [MSA] on February 29, 2024, during a Settlement Conference, a mutual mistake occurred via a typographical error. Specifically, the MSA at paragraph 10(a) provides that Wife is to receive a rollover from Husband's Ameritas IRA #2283 in the amount of $361,126 when both of the parties' attorneys acknowledge that the amount agreed to be rolled over was in fact $368,126. Husband's attorney [Eric Winter, Esquire], in fulfilling his ethical duties as an officer of the court, acknowledged that the MSA contained a typographical error that neither party noticed at the time the MSA was signed. However, the correct number was clearly displayed on the asset chart the parties were utilizing during their discussions. Nevertheless, Husband refuses to permit the rollover of the correct amount.

\* \* \*

> Given Attorney Winter's concurrence with [Wife's attorney,] Attorney Levin[,] that the number in the agreement was in fact a t[y]pographical error, it is hoped that Husband will allow the rollover to occur in the correct amount without the necessity of any further court action which, may include a request for attorney's fees.

(D.H.O. Tel. Conf. Mem., [dated] April 1, 2024)[.]

Husband thereafter refused to pay the higher QDRO figure and also failed to exchange property with Wife under the MSA. As such, on April 29, 2024, Wife filed a Petition to Enforce the MSA alleging that Husband had breached MSA ¶ 6 by not allowing her to retrieve her property from the marital residence as directed. Wife also alleged that Husband breached MSA ¶ 10(a) by not issuing a QDRO to her for $368,126.

In his Answer to the Petition to Enforce, Husband admitted that after agreeing to a property exchange date of April 12, 2024, and after Husband obtained a constable to be present, he advised Wife on April 9 that he would not comply with MSA ¶ 6; instead, he told Wife, through counsel, that he would agree to a property exchange if Wife removed some property items from the agreed list and if Husband was present at the exchange. Husband also admitted that after Wife rejected his offer, he cancelled the property exchange. Husband nevertheless denied he had breached MSA ¶ 6, averring that he "believes that his behavior was neither obdurate nor vexatious and he had good reason to act as he did."

As to the QDRO issue, notably, Husband admitted in his Answer that the QDRO figure in the MSA was a typographical error. Specifically, he admitted to the following language as alleged by Wife:

> ¶ 21. During the conference [with DHO Conley], the parties negotiated the terms of the MSA wherein Wife is to receive a rollover via [QDRO] from Husband's Ameritas IRA in the amount of $368,126. However, a

typographical error occurred, and the amount of the rollover entered into the MSA is $361,126. *See* MSA page 11, paragraph 10a.

Husband further admitted, by his failure to specifically deny, that:

¶ 24. Counsel for both parties concur that there was a mutual mistake in the typographical error and the Divorce Hearing Officer's memorandum refers to the [c]ourt's ability to reform a contract in the event of mutual mistake.

Finally, in his Answer with New Matter, Husband asserted that he did not believe the MSA "was fair," that "Wife has claimed items that are rightfully his," that he believes she might "steal items" if permitted in the former marital residence and that as such, he wants to be present at any property retrieval, that Wife's attorney "prepared the MSA" and that the MSA "should be strictly construed against the scrivener and an error by the scrivener should be binding on the party the scrivener represents."

A hearing was held before this [c]ourt on July 1, 2024, on the Petition to Enforce. At that hearing, Husband agreed that he signed the MSA at the February 29, 2024 settlement conference but that he was pressed for time, "under distress" and didn't fully read it. He claimed that after he got home he read it "and was sorry I signed it." He agreed that in the MSA, he gave a portion of his Ameritas IRA to Wife. He denied, however, that he agreed to transfer $368,126 to Wife but only to the figure in the MSA, of $361,126.

Husband later testified that after Wife contested the amount due under the QDRO, he decided that "I ought to be able to contest these things [property items] that I don't really—I didn't really feel good about." He also believed Wife had stolen other items from him. He went through the list of items due Wife and identified a few he believed should remain with him.

Wife testified that she had arranged with Husband, through their respective attorneys, to make a property exchange on

- 4 -

April 12, 2024, for the items to which she was entitled under MSA Exhibit A, and which items she still seeks to retrieve. She also testified and verified that she paid fees to her attorney in order to enforce the MSA, which as of the hearing date, totaled $3,510.35.

(Trial Court Opinion, dated 9/24/24, at 1-3) (some footnotes and record citations omitted).

On July 3, 2024, the trial court issued an order finding that there was an agreement of the minds as to the terms of the MSA, specifically, "that Husband was to transfer $368,126 from his Ameritas IRA account ending in number X2283 to an IRA account designated by [Wife]. Due to a scrivener's error that resulted in a mutual mistake, Paragraph 10(a) of the MSA provides for the transfer of $361,126." (Order, 7/3/24). Because the court concluded that the error was not based on a lack of a meeting of the minds, it deemed the MSA enforceable. The court also found that the parties agreed to the exchange of personalty, and ordered that Husband shall arrange to have a constable or counsel present in order to allow for the peaceful access and transfer of the personal items listed in Exhibit A of the MSA. Finally, the court awarded counsel fees in the amount of $3,510.35 to Wife.

Husband filed a timely notice of appeal on July 30, 2024. Pursuant to the court's order, Husband filed a concise statement of errors complained of on appeal on August 23, 2024.

Husband raises the following three issues on appeal:

1. Whether the [trial] court erred in modifying the amount in the MSA?

2. Whether the [trial] court erred in ordering [Husband] to comply with the exchange of personal property?

3. Whether the [trial] court erred in awarding [Wife] attorney fees?

(Husband's Brief at 4) (unnecessary capitalization omitted).

In his first issue, Husband argues that the trial court erred in reforming the MSA to reflect that he must pay $368,126 to Wife. Initially, Husband agrees that a typographical error occurred, and he acknowledges that such a scrivener's error may be the basis for reformation of a settlement agreement. Nevertheless, Husband claims that the court may only reform the agreement if the correct amount is established, and he insists that there was no agreement as to what the amount should have been. Husband contends that at the hearing on the petition to enforce the MSA, Wife offered no testimony or evidence that the parties agreed for Husband to transfer Wife $368,126. Husband concludes the trial court abused its discretion when it determined that $368,126 was the correct amount the parties agreed to transfer in the MSA, and this Court must grant relief. We disagree.

"It is well established that in Pennsylvania, a settlement agreement between a husband and wife is governed by the law of contracts unless the agreement itself provides otherwise." *Brower v. Brower*, 604 A.2d 726, 730 (Pa.Super. 1992) (internal brackets, citation, and quotation marks omitted).

> When interpreting a marital settlement agreement, "the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding

- 6 -

function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa.Super. 2005) (internal citations and quotation marks omitted). "It is well-settled that this Court is bound by the trial court's credibility determinations." *Lewis v. Lewis*, 234 A.3d 706, 711 (Pa.Super. 2020). Furthermore, "[w]e observe that factual statements by a 'party in pleadings ... made for that party's benefit, are termed judicial admissions and are binding on the party.' Judicial admissions are automatically considered 'true and cannot be contradicted by the admitting party.'" *Est. of Sacchetti v. Sacchetti*, 128 A.3d 273, 283 (Pa.Super. 2015), *appeal denied*, 636 Pa. 678, 145 A.3d 728 (2016) (quoting *Cogley v. Duncan*, 32 A.3d 1288, 1292 (Pa.Super. 2011)).

Contract interpretation is a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *Stamerro, supra* at 1257.

> Marital settlement agreements are "private undertakings between two parties, each having responded to the 'give and take' of negotiations and bargained consideration." *Brower*[*, supra* at 731]. A marital support agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. *Gaster v. Gaster*, 703 A.2d 513 (Pa.Super. 1997). "A settlement agreement between [spouses] is governed by the law of contracts unless the agreement provides otherwise." [*Chen v. Chen*, 840 A.2d 355, 360 (Pa.Super. 2003), *appeal granted in part*, 578 Pa. 433, 853 A.2d 1011 (2004).] The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial

- 7 -

modification. ***Brower, supra*** at 730; 23 Pa.C.S.A. § 3105(c).

***Stamerro, supra*** at 1258. "It has long been the law that courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident or mistake." ***Zurich Am. Ins. Co. v. O'Hanlon***, 968 A.2d 765, 770 (Pa.Super. 2009) (citing ***Giant Food Stores, LLC v. THF Silver Spring Development, L.P.***, 959 A.2d 438, 449 (Pa.Super. 2008)).

> We most commonly have allowed reformation of mistaken contract provisions in cases of "scriveners' errors," where the parties' writing mistakenly failed to record their agreed-upon intentions. In such situations, the court may reform the contract document so that its language conforms to what the parties intended.

***Murray v. Willistown Twp.***, 169 A.3d 84, 91 (Pa.Super. 2017).

> [M]istake of a scrivener in preparing a deed, will, or other writing may be established by parol evidence and the instrument reformed accordingly. [W]hether the mistake be unilateral or bilateral, the quality of proof required to establish the existence of the mistake is the same; that proof of the mistake must be established by evidence that is clear, precise, convincing, and of the most satisfactory character.

***In re Mihordin***, 162 A.3d 1166, 1172 (Pa.Super. 2017), *appeal denied*, 645 Pa. 434, 180 A.3d 1212 (2018) (internal citations and quotation marks omitted; brackets in original).

Instantly, in his answer to Wife's petition to enforce the MSA, Husband admitted that the parties negotiated that Wife would receive a rollover in the amount of $368,126 from Husband's Ameritas IRA, and he also admitted that the amount of rollover stated in the MSA ($361,126) was a typographical

error. Furthermore, as the DHO explained in the telephone conference memorandum, counsel for both parties concurred during the conference that there was a typographical error in Paragraph 10 of the MSA concerning the IRA rollover amount. Following the telephone conference, the trial court conducted a hearing on Wife's petition to enforce the MSA. At the hearing, Husband testified that he did not agree to transfer $368,126 to Wife. (*See* N.T. Hearing, 7/1/24, at 11-12). After hearing testimony from the parties, the trial court found:

> [T]here was a meeting of the minds as to the terms of the marital settlement agreement. The parties agreed that Husband … was to transfer $368,126 from his Ameritas IRA account … to an IRA account designated by [Wife].
>
> Due to a scrivener's error that resulted in a mutual mistake, Paragraph 10(a) of the [MSA] provides for the transfer of $361,126. By [o]rder of this [c]ourt, that number is changed to $368,126.

(*Id.* at 33).

In its Rule 1925(a) opinion, the trial court further explained that the amount set forth in Paragraph 10 of the MSA did not reflect the parties' actual intent at the time they entered into the contract. The court stated:

> The record was clear that the higher figure was the negotiated figure and intended by the parties as a term of settlement. Husband's testimony to the contrary was not credible in light of his earlier explicit admissions in his Answer to the Petition to Enforce that it was a "typographical error" and "mutual mistake." These admissions were in addition to the concurrence of Husband's attorney and DHO Conley that a mutual mistake occurred.

(Trial Court Opinion at 6) (internal record citation omitted). Thus, the court

concluded that "given the clear existence of a mutual mistake, it was proper for this [c]ourt to reform the MSA terms to what the parties intended." (*Id.* at 7).

Upon review, we conclude that Wife provided sufficient evidence of a mistake by way of a scrivener's error to permit the trial court to reform the MSA. *See Murray, supra*. The trial court based its findings of fact on the admissions represented in the DHO's telephone conference memorandum, Husband's answer to the petition to enforce, and on the testimony from the July 1, 2024 hearing. *See Sacchetti, supra*. As the trial court observed, Husband admitted in his answer to Wife's petition to enforce that the parties agreed Husband would rollover $368,126, and that the $361,126 amount entered into the MSA was a typographical error. (*See* Answer, 5/13/24, at ¶¶ 21-23). The trial court accepted this admission, and rejected as incredible Husband's testimony at the July 1, 2024 hearing refuting the agreement reached by the parties. We are bound by credibility decisions of trial court, which are supported by the record. *See Lewis, supra*. The record supports the trial court's findings that the $361,126 amount stated in the MSA was a scrivener's error.[1] *See Stamerro, supra*. We further conclude that Wife

_____

[1] We note that the trial court referred to the typographical error in the MSA as both a "scrivener's error" and a "mutual mistake." A "mutual mistake" "occurs when the parties to the contract have an erroneous belief as to a basic assumption of the contract at the time of formation" and therefore "the written instrument fails to set forth the true agreement of the parties." *Murray,*
*(Footnote Continued Next Page)*

presented sufficient evidence that the parties had intended the MSA to reflect a rollover amount of $368,126. Therefore, the trial court appropriately reformed the MSA to reflect the agreed-upon amount. *See Murray, supra*; *In re Mihordin, supra*. Accordingly, Husband's first issue is meritless.

In his second issue, Husband contends that the trial court erred when it ordered him to facilitate the exchange of the personal property set forth in Exhibit A of the MSA. Husband asserts that many of the items listed in Exhibit A are highlighted in yellow, but some are not. Husband claims that because of the highlighting he had "a feeling that [Wife] was not entitled to all the property." (Husband's Brief at 9). Husband contends that because the MSA does not clarify the highlighting, the contract was too vague to be enforced, and this Court must grant relief. We disagree.

Preliminarily, we must discern whether Husband preserved this issue for our review. It is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Notably, "a theory of error different from that presented to the trial jurist is waived on appeal, even if both theories support the same basic allegation of error which gives rise to the claim for relief." *Carlino E. Brandywine, L.P.*

---

*supra* at 90 (quoting *Voracek v. Crown Castle USA Inc.*, 907 A.2d 1105, 1107-08 (Pa.Super. 2006), *appeal denied*, 591 Pa. 716, 919 A.2d 958 (2007)). Here, the evidence supports the trial court's determination that the MSA contained a scrivener's error. (*See* N.T. Hearing, 7/1/24, at 33). We affirm the order of the trial court based on the scrivener's error.

- 11 -

***v. Brandywine Vill. Ass'n***, 197 A.3d 1189, 1200-01 (Pa.Super. 2018) (internal citation omitted).

Here, the trial court explained:

> The reasons Husband testified to [for not complying with the exchange of personal property] included his belief that, because Wife contested the amount due under the QDRO, he "ought to be able to contest [the property items] that I don't really – I didn't really feel good about." He also refused to comply because he believed Wife had stolen items from him.

(Trial Court Opinion at 7) (internal record citations omitted).

Our review of the record supports the trial court's statements. Husband did not present any argument in the trial court that the MSA was invalid because of highlighting in the MSA. Specifically, Husband did not raise any concern with the highlighting in his Answer to the petition to enforce or in his testimony before the court on the hearing. Because Husband did not raise this argument before the trial court, Husband's second issue is waived. ***See Carlino E. Brandywine, L.P., supra***.

In his third issue, Husband argues that the trial court erred when it awarded attorney's fees to Wife. Husband contends that he did not commit any wrongdoing in refusing to comply with the MSA because he believed that the preceding issues had arguable merit. Husband insists that he had reasonable cause to present these issues and his behavior was not designed to harass or annoy. Husband concludes the court abused its discretion in awarding attorney's fees to Wife, and this Court must grant relief. We

disagree.

"Appellate review of a trial court's order awarding attorney's fees to a litigant is limited solely to determining whether the trial court palpably abused its discretion in making a fee award." *Thunberg v. Strause*, 545 Pa. 607, 614-15, 682 A.2d 295, 299 (1996).

> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion, the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record. Review of the grant of counsel fees is limited ... and we will reverse only upon a showing of plain error.

*Habjan v. Habjan*, 73 A.3d 630, 642 (Pa.Super. 2013) (internal quotation marks, citations, and brackets omitted). "Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 652, 976 A.2d 474, 482-483 (2009). *See also McMullen v. Kutz*, 603 Pa. 602, 613-15, 985 A.2d 769, 776-77 (2009) (explaining that "parties may contract to provide for the breaching party to pay the attorney fees of the prevailing party in a breach of contract case").

Instantly, Paragraph 19 of the MSA provides:

> If either party breaches any provision of [the MSA], the other party shall have the right, as his or her election, to sue for damages for such breach or seek such other remedies or relief as may be available to him or her, and the party breaching this contract shall be responsible for payment of legal fees and costs incurred by the other in

enforcing their rights under [the MSA].

(MSA at ¶ 19).  Paragraph 20 of the MSA further provides that, except in the case of breach, each party to the MSA would otherwise be responsible for his or her own attorney's fees.  (*See* MSA at ¶ 20).

Paragraph 6 of the MSA governs division of the parties' personal property.  Therein, Husband agreed to transfer all personal property listed in the attached Exhibit A to Wife.  (*See* MSA at ¶ 6).  Wife agreed to provide three proposed dates in which she could retrieve the property, after which Husband agreed to select a date and arrange for the presence of a constable on the date and time Wife retrieves her personal property.  (*See id.*)

At the hearing on Wife's petition to enforce, Wife testified that she had arranged with Husband, through their attorneys, to make a property exchange on April 12, 2024; however, Husband did not permit her to go to the property to get her belongings.  (*See* N.T. Hearing, 7/1/24, at 15).  Husband explained that he was entitled to contest the property items that he did not "really feel good about."  (*Id.* at 25).  Husband then suggested certain items from the list that he felt should be turned over to Wife, and items that he believed should remain with him.  (*Id.* at 27-28).  At the close of the hearing, the trial court found that Husband failed to comply with the property division agreed to by the parties under Paragraph 6 of the MSA, gave Husband 30 days in which to comply with the MSA and allow for the peaceful transfer of property, and found that Husband was responsible for $3,510.35 in Wife's attorney fees.  (*Id.* at

33-34).

In its opinion, the trial court further explained:

> This [c]ourt found that Husband did not raise any fair or legitimate arguments before the [c]ourt; instead, the evidence overwhelmingly supported a finding of his breach of MSA ¶¶ 6 and 10. MSA ¶ 20 permits a party to collect attorney's fees from the party who breaches the MSA. Wife presented more than sufficient evidence of Husband's breaches, outlined above. In addition, Wife presented sufficient testimony supporting the amount of fees she has incurred. In addition, this [c]ourt held that Wife was entitled to counsel fees under the Judicial Code due to Husband's obdurate and vexatious conduct.

(Trial Court Opinion at 7) (citations omitted).

Upon review, we find no error of law or abuse of discretion in the court's finding that Husband breached the MSA and is therefore responsible for payment of Wife's attorney's fees incurred in enforcing her rights under the MSA.[2] *See Trizechahn, supra*; *Habjan, supra*. Thus, Husband's third issue merits no relief. Accordingly, we affirm.

Order affirmed.

---

[2] We note that the trial court also found that Husband's "actions post marital settlement agreement were obdurate and vexatious" and that the imposition of counsel fees would also be appropriate on that basis. (*See* N.T. Hearing, 7/1/24, at 35).

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 07/22/2025